JAMES HART, Trustee of the Estate of B. J. McKay, also Known as Benjamin J. McKay, a Bankrupt, Respondent, v. C. O. CASTERTON et al. C. O. CASTERTON, Appellant.

(218 N. W. 644.)

**Bankruptcy — transfer of real estate made in good faith and for a then consideration.**

1. In an action brought by the plaintiff as trustee of the estate of a bankrupt to avoid a mortgage of real property, the record is examined and it is *held*, for reasons stated in the opinion, that the transfer was made in good faith and for a then present consideration.

**Mortgages — when failure to record is not grounds for setting mortgage aside — mortgagee estopped to assert priority of mortgage.**

2. Under § 5594, Comp. Laws 1913, defining the effect of the recording or the want of recording of an instrument affecting the title to real property, the mere failure to record a mortgage is not a ground for setting it aside by subsequent creditors who have acquired no specific lien on the property; but where an instrument is kept off the record in order that the credit of the mortgagor be not impaired, the mortgagee is estopped to assert priority as

Note.—(2) As to estoppel against mortgagee to assert priority of mortgage, see annotation in 48 L.R.A.(N.S.) 761; 19 R. C. L. 411.

against creditors without notice, who have become such on the faith of the record.

**Mortgages — unrecorded mortgage valid between parties — recorded within four months' period — not voidable preference.**

3. Under § 5594, Comp. Laws 1913, a mortgage is not required to be recorded in order to be valid between the parties and as against creditors not having liens by attachment or judgment, and so is not subject to being avoided as a preference under the provisions of the Bankruptcy Act, § 60a, as amended, U. S. C. title 11, § 96a, where executed and delivered more than four months prior to the filing of the petition in bankruptcy of the mortgagor, though recorded within the four months' period.

**Mortgages — when trustee in bankruptcy may invoke estoppel against mortgagee.**

4. Where the trustee of the estate of a bankrupt seeks to invoke an estoppel as against a mortgagee on account of the mortgage being withheld from record, he can do so only to the extent that such withholding prejudiced the creditors whom he represents.

**Mortgages — creditor permitting mortgagee to pay taxes did not lose right to invoke estoppel against mortgagee for failure to record mortgage seasonably.**

5. A creditor who is entitled to invoke an estoppel as against a mortgagee of his debtor, on account of failure to seasonably record the mortgage, does not lose his right to do so by permitting the mortgagee to pay taxes and institute proceedings to foreclose the mortgage before asserting his right; but the mortgagee having as such paid the taxes on the mortgaged property, is entitled to a prior lien for the taxes thus paid.

Opinion filed March 21, 1928.

Bankruptcy, 7 C. J. § 258 p. 160 n. 34; § 283 p. 182 n. 8; § 438 p. 273 n. 27. Fraudulent Conveyances, 27 C. J. § 338 p. 595 n. 28.  Mortgages, 41 C. J. § 420 p. 496 n. 15; § 534 p. 574 n. 98.

Appeal from the District Court of Golden Valley County, *Pugh,* J. Action to quiet title.  From a judgment in favor of the plaintiff, defendant appeals.

Modified.

*Theo. B. Thorkelson* and *Lawrence, Murphy & Nilles,* for appellant.

The state law governs in determining whether property might have been levied upon and sold under judicial process and therefore passes to the trustee.  Rosenbluth v. De Forest, 85 Conn. 40, 81 Atl. 955.

The words "property of the bankrupt" mean only the property to which the bankrupt is beneficially entitled, and do not include property to which he has only a bare legal title. 3 R. C. L. 218; First Nat. Bank v. Staake, 202 U. S. 141, 50 L. ed. 967.

The trustee does not take title to money and property in possession of third persons, which did not belong to the bankrupt prior to his adjudication. The question of ownership is one of fact. Collier, Bankr. 810, note 29.

The trustee does not acquire title to property held by a bankrupt as a mere bailee. 7 C. J. 128, § 218.

The trustee does not acquire title to property, the legal title to which is in the bankrupt as trustee. 7 C. J. 129, § 218.

A transaction which does not diminish the general fund, does not constitute a preference. Western Tie & Timber Co. v. Brown, 196 U. S. 502, 49 L. ed. 571.

"An attempt to prefer is not to be confounded with an attempt to defraud, nor a preferential transfer with a fraudulent one." Coder v. Arts, 213 U. S. 223, 53 L. ed. 772.

"The payment of an adequate present consideration by the transferee negatives fraud on creditors, and is sufficient to sustain the transaction." Peterson v. Sabin, 214 Fed. 234; Piedmont Sav. Bank v. Levy, 138 N. C. 274, 50 S. E. 657; First State Bank v. Sibley County Bank, 96 Minn. 456, 105 N. W. 485.

"There must be some degree of turpitude in the conduct of a party, before a court of equity will estop him from the assertion of his title; the effect of the estoppel being to forfeit his property, and transfer its enjoyment to another." Gjerstadengen v. Hartzell, 9 N. D. 268, 83 N. W. 230.

*Keohane & Oppegard,* for respondent.

"The trustee may avoid any transfer by the bankrupt which any creditor of such bankrupt might have avoided." Fourth Street Nat. Bank v. Milbourne Mills Co. 172 Fed. 177.

"Claims which for want of record or other reasons would not have been valid liens as against the claims of any creditor of the bankrupt shall not be liens against his estate." Re McDonald, 173 Fed. 99; Crucible Steel Co. v. Holt, 174 Fed. 127.

"The effect of the voluntary conduct of a party whereby he is absolute-

ly precluded, both at law and in equity, from asserting rights which might have otherwise existed, either of property, of contract, or of remedy, as against another person who has relied in good faith on such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract or of remedy." Baird v. Stephan, 52 N. D. 568, 204 N. W. 188.

"No one may in equity successfully deny, to the damage of another, the truth of the statements and representations by which he has purposely or carelessly induced such other to change his situation." Hemmer v. United States, 123 C. C. A. 194, affirmed in 241 U. S. 379, 60 L. ed. 1055; Hopkins v. Joyce (Wis.) 47 N. W. 722.

Fraud is not a necessary element in estoppel. 10 R. C. L. 691.

"An estoppel good against the holder of the legal title to land is good as against an undisclosed cestui que trust." 21 C. J. 1184.

"A corporation cannot, any more than an individual, involve others in onerous engagements by its representations or silence, and then defeat the calculations and claims its own conduct has superinduced." Bissell v. Jeffersonville, 16 L. ed. 664; Moran v. Miami County, 17 L. ed. 342.

"Corporations may be divested of their property by the negligence of their officers." 14a C. J. 414.

"The acts of an administrator may be set up by way of estoppel to bar a recovery by the estate which he represents." Thomas v. Greer, 6 Tex. 372.

NUESSLE, Ch. J. This is an action to quiet title brought by the plaintiff James Hart as trustee of the estate of B. J. McKay, a bankrupt.

Briefly stated the facts as disclosed by the record are as follows: E. J. Curtin and B. J. McKay were residents of Decorah, Iowa. They were the president and cashier respectively of the Citizens Savings Bank of that place. They were also stockholders in the First National Bank of Beach, North Dakota, of which Curtin was the vice-president. In 1914 the First National Bank of Beach assigned a mortgage covering the premises involved in this action to Curtin. In 1915 Curtin foreclosed the mortgage. In fact this mortgage though assigned to Curtin was the property of the Citizens Savings Bank. On foreclosure sale the

property was bid in in the name of McKay. There was no redemption and sheriff's deed was issued to McKay in May, 1916. This deed was at once put of record. McKay paid no money and the property was not his. He took the title for the Savings Bank. In 1916 and again in 1919 McKay executed and delivered deeds for the property to the bank but these were never recorded. In December 1918, McKay executed a mortgage for $11,000 covering the premises here involved to Curtin. Curtin paid nothing for the mortgage, which was executed to him in order that he might negotiate it. The defendant, C. O. Casterton, is one of four executors of the estate of his father, Ogden Casterton, deceased. The other executors are his brother, his brother-in-law and Curtin. On December 14th, 1918, the Casterton estate held a certain mortgage securing approximately $11,000. This was past due. It had been bought from the Savings Bank. It was thought advantageous to the estate to exchange this mortgage for the note and mortgage executed by McKay to Curtin. An exchange was accordingly made. The mortgage and assignment, however, were not recorded. They were left in the safe-deposit box of the executors in the Savings Bank. This box was accessible to all of the executors. The property in North Dakota was rented from year to year through the agency of the First National Bank of Beach or its officers. The leases were oral. It was commonly known in the vicinity of Beach that the property stood in the name of McKay. In 1923 the First National Bank of Beach was desirous of becoming a depositary for the county funds of Golden Valley county. In that behalf the bank submitted to the commissioners of Golden Valley county a depositary bond in the sum of $50,000, on which Curtin and McKay were sureties. About the same time the bank likewise seeking to become a depositary for the Lone Tree school district, submitted a bond to the district on which also Curtin and McKay were sureties. Both Curtin and McKay in justifying on these bonds swore that they were freeholders of Golden Valley county. Attached to the bonds were statements purporting to show the real property which McKay owned in Golden Valley county. There is no positive evidence that they were attached with the knowledge or consent of McKay. These statements listed the property involved in this action. No other land in Golden Valley county stood in Mc-Kay's name on the records. Prior to this time the county commissioners of Golden Valley county had adopted a resolution to the effect that no

depositary bonds would be accepted where the sureties were nonresidents unless it appeared that such sureties were freeholders of the county and owned property therein worth the penalty of the bond. When the bond in question was submitted to the county board, the county commissioners examined the record and it appearing therefrom that the property listed in the statement attached belonged to McKay and was free of encumbrance, the bond was accepted and the First National Bank of Beach was designated as a depositary. Likewise one of the officers of the school district examined the county records, and finding the real property listed, in the name of McKay and without encumbrance, the bank was designated as a depositary for the school district. Pursuant to these designations both the county and the school district deposited funds in the First National Bank of Beach. On January 17th, 1924, the Citizens Savings Bank of Decorah and the First National Bank of Beach were closed as insolvent and taken in charge by the banking authorities. When the First National Bank was closed both Golden Valley county and Lone Tree school district had deposits therein. At the time of the trial of this action the amount remaining unpaid of the county's deposit, after crediting dividends paid by the receiver, was about $25,000, and of the school district's deposit more than $500. The assets of the bank are insufficient to discharge its obligations and the depositors will suffer substantial loss. How great is not yet determined. On February 11th, 1924, the defendant C. O. Casterton caused the McKay note and mortgage and the assignment thereof to him to be recorded in the office of the register of deeds of Golden Valley county. In December, 1925, Casterton paid the taxes on the land for the years 1923 and 1924 and in 1926 foreclosed the mortgage. He bid in the property on sale for the amount due on the mortgage including interest, taxes and costs. No redemption was made from this sale and Casterton was the owner of the certificate at the time of the trial. On June 10th, 1924, an involuntary petition in bankruptcy was filed against McKay, he was adjudged a bankrupt, and the plaintiff Hart was appointed trustee of the estate. McKay was in fact hopelessly insolvent on February 11th, 1924. When he was adjudged a bankrupt his indebtedness exceeded $100,000, not taking into account his liability on the depositary bonds. His assets, exclusive of the land here involved, did not exceed $6,000. The land is worth

about $12,000. Golden Valley county and Lone Tree school district proved their claims against the estate, and the same were allowed. The plaintiff Hart brought the instant action to quiet title claiming that the mortgage from McKay to Curtin and which had been assigned to Casterton was fraudulent and void as against the other creditors of McKay.

On the trial in the district court—and the same contentions are now made by both parties in this court—the plaintiff contended that the mortgage given by McKay to Curtin and the assignment thereof by the latter to the defendant Casterton were in fact fraudulent and on that account void; that by reason of the failure of Casterton to file the mortgage and assignment for record, and by his conduct in the premises generally with respect thereto, he is now estopped to claim under the mortgage as against McKay's creditors or anyone representing them; that, in any event, the transaction created a preference; that though the mortgage was executed and assigned in 1918 it did not become effective as against creditors until placed of record in February, 1924; that this was within four months prior to the filing of the petition in bankruptcy and, therefore, the transfer was preferential and void. On the other hand, the defendant denied any fraud on his part or on the part of the executors; he further contended that under the facts as shown there could be no estoppel as against him; that with respect to the claim of preference the land never was the property of McKay and so the mortgage in question and the assignment thereof could not constitute a preference, since the land never having been a part of Mc-Kay's estate, the giving of the mortgage did not diminish that estate; that even though the land were McKay's the mortgage transaction was bona fide and Casterton paid full value at the time the assignment was executed and delivered to him; that the time of the assignment is the time from which the period must be measured in determining whether or not the transfer constituted a preference, and that since it was executed and delivered in 1918 and placed of record prior to the filing of the petition in bankruptcy, no preference was created.

The trial court found for the plaintiff on the grounds; first, that the transaction was fraudulent, and second, that, in any event, under the statute of North Dakota, § 5594, Comp. Laws 1913, defining the effect of recording or the want thereof, and under the Bankruptcy Act of the

United States, it created a preference and was therefore void as against the trustee representing the other creditors.

The substance of the facts established by the record has been stated. However it will be necessary to consider the record somewhat more in detail in disposing of the issues of fraud and estoppel. After a careful consideration of all the evidence we have reached the conclusion that whatever may have occurred afterwards, in the first instance the mortgage and the assignment thereof were not fraudulent. It is clear that McKay held the property for the bank, but whether he did or did not, Casterton, who took the assignment of the McKay mortgage for the estate, had no fraudulent intent when he took it. Apparently he relied greatly upon Curtin. Neither Casterton nor the estate had any interest in the Savings Bank as a stockholder or otherwise. Though Ogden Casterton, who died in 1914, had been a stockholder, director, and officer of the bank, yet at once after his death his stock was sold and thereafter the estate was not even a depositor in the bank. The estate held a certain mortgage which had been bought from the bank. This obligation was past due. It was not paid. Rather than resort to foreclosure for the purpose of collection the executors determined it wise and proper to take a new note and mortgage in exchange for the past due indebtedness then owing to the estate, and so a trade was arranged with the bank. The new note and mortgage thus taken were the McKay note and mortgage to Curtin which Curtin assigned to the defendant Casterton. So there was at that time a valid and sufficient present consideration. Up to that time there was no ground for the slightest suspicion of fraud. The bank was solvent. Curtin the president of the bank was solvent. McKay the cashier was solvent and apparently a man of financial substance. Had Casterton within a reasonable time filed the mortgage and assignment for record there can be no question but that the transaction would have been unassailable.

But the papers were not put of record until February 11th, 1924. Then McKay was hopelessly insolvent and then Casterton knew or had reason to know of this insolvency. And, in the meantime, between the time of the assignment of the mortgage to Casterton and the filing of the same for record, the county of Golden Valley and the Lone Tree school district, misled by the apparent unencumbered ownership of the land by McKay, had acted to their prejudice. Though the mort-

gage in question is claimed to have been the property of the Casterton estate, it was assigned to the defendant Casterton personally. Curtin and McKay were both stockholders in the First National Bank of Beach and Curtin was a director and the vice-president thereof. For some reason Curtin was not called upon to testify as a witness in this case, but McKay testified respecting his ownership of the land and that it in fact belonged to the Savings Bank. McKay never went into actual personal occupation of the land. He says that he in fact never had anything to do with it. Even so, the Savings Bank or Curtin made arrangements with the First National Bank of Beach to look after it. It was listed in McKay's name. Curtin represented to various individuals in Golden Valley county that it belonged to McKay; Curtin, when an insurance loss was incurred, directed that the draft in payment thereof be made payable to McKay. The taxes were paid by the bank and receipts taken in the name of McKay. When the bank at Beach desiring to become a public depositary submitted bonds as required by law, Curtin and McKay were the sureties on these bonds, and, though McKay denies any knowledge as to what was done in this behalf, when the bonds were submitted, with them was submitted a statement showing McKay to be a freeholder of Golden Valley county and setting forth the land here involved as belonging to him. It is inconceivable that these things were done without his knowledge and approval. At that time this was the only land that stood in his name in Golden Valley county. McKay also in his justification on these bonds swore that he was a freeholder of Golden Valley county. Thus McKay represented the land to be his with the intention that such representation should be acted upon. Curtin must also have known of this representation and intend- ed that it should be acted upon. Golden Valley and the Lone Tree school district searched the records, found that so far as the record disclosed the representation was true and that the land was unen- cumbered, and in reliance upon the representation and the record ac- cepted the bonds. Thus they acted to their prejudice. Clearly both Curtin and McKay were guilty of wilful deception in the matter. In the meantime Casterton permitted the mortgage and the assignment to remain off the record. Casterton says that he believed the papers were recorded; that he had entrusted this duty to his fellow executor, Curtin, and thought it was performed. But Casterton also says that

nothing had been paid on the mortgage in the way of interest though almost six years had elapsed since the mortgage was taken. Likewise Casterton says that within a very short time after the failure of the banks he had Curtin send the papers for record. This, in the face of the fact that Curtin had theretofore failed to perform his duty in this respect. Casterton's testimony on the whole is contradictory and unsatisfactory. So it seems to us that notwithstanding his denial the evidence fully warrants a finding that the papers were withheld from record through and by reason of some arrangement; that this arrangement was for the benefit of Curtin or McKay or the Savings Bank or all of them and in order to enhance their credit, and that Casterton was a party to it. It may be that a failure on the part of Curtin to record the papers, if he kept them from the record for his own benefit or for the benefit of the bank, might not be chargeable against Casterton owing to the conflict of interests. But this cannot be so either as regards Casterton personally or as executor. So far as he was concerned there was no conflict of interests. He had no interest in the bank and was not concerned directly in the affairs of Curtin or McKay. It seems to us that under these circumstances the failure of Casterton in this respect was the failure of the estate, if Casterton held the mortgage for the estate, and the estate must suffer the consequences, if any, resulting therefrom. We can see no difference in principle between withholding the papers from record altogether and withholding them from record for such a time only as would result in prejudice to third parties.

The statute, § 5546, Comp. Laws 1913, et seq., makes provision for the recordation of instruments affecting the title to real property. Section 5594, Comp. Laws 1913, defines the effect of recording or the want thereof. The latter section reads:

"Every conveyance by deed, mortgage or otherwise, of real estate within this state, shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed or deed of bargain and sale, deed of quitclaim and release, of the form in common use or otherwise, is first duly recorded; or as against any attachment levied thereon or any judgment lawfully

obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. . . ."

The mere failure to record a mortgage is not a ground for setting it aside by subsequent creditors who have acquired no specific lien on the property described therein. Blennerhassett v. Sherman, 105 U. S. 100, 26 L. ed. 1080; Hutchinson v. First Nat. Bank, 133 Ind. 271, 36 Am. St. Rep. 537, 30 N. E. 952. But here there was something more than a passive failure to record. Here the papers were kept from the record for the purpose of enhancing the credit of the Savings Bank or of Curtin or McKay. Where a mortgage is kept off the record in order that the credit of the maker may not be impaired, the mortgagee is estopped to assert priority as against creditors becoming such on the faith of the record. See Blennerhassett v. Sherman, supra; Clayton v. Exchange Bank, 57 C.' C. A. 656, 121 Fed. 630, 191 U. S. 567, 48 L. ed. 305, 24 Sup. Ct. Rep. 840; Standard Paper Co. v. Guenther, 67 Wis. 101, 30 N. W. 298; Baker v. Pottle, 48 Minn. 479, 51 N. W. 383; Hopkins v. Joyce, 78 Wis. 443, 47 N. W. 722. See also State Bank v. Newell, 55 N. D. 184, 212 N. W. 848. We think under the circumstances that both Casterton and the Casterton estate are estopped to assert priority as against Golden Valley county and the Lone Tree school district.

In the instant case the plaintiff asserts that he stands in position to vindicate the rights of any or all of the creditors of McKay; that since the mortgage and the assignment thereof to Casterton were not recorded more than four months prior to the filing of the petition in bankruptcy, the mortgage is preferential and must be set aside. This contention is bottomed upon the Bankruptcy Act, § 60a, as amended, U. S. C. title 11, § 96a, wherein it is provided:

"A person shall be deemed to have given a preference if being insolvent, he has, within four months of the filing of the petition, . . . made a transfer of any of his property, and the effect of enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors in the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date

of the recording or registering of the transfer, if by law such recording or registering is required."

There has been some difference of judicial opinion as to the construction and effect of this provision of the Act. See First Nat. Bank v. Connett, 5 L.R.A.(N.S.) 148, 142 Fed. 33, 73 C. C. A. 219; Loeser v. Savings Deposit Bank & T. Co. 18 L.R.A.(N.S.) 1233, 78 C. C. A. 597, 148 Fed. 975, and cases cited in the notes thereto. But we think that this difference has been definitely settled by the more recent adjudications of the Supreme Court of the United States, contrary to the contention advanced in the instant case by the plaintiff. See Carey v. Donohue, 240 U. S. 430, 60 L. ed. 726, L.R.A.1917A, 295, 36 Sup. Ct. Rep. 386; Bailey v. Baker Ice Mach. Co. 239 U. S. 268, 60 L. ed. 275, 36 Sup. Ct. Rep. 50; Martin v. Commercial Nat. Bank, 245 U. S. 513, 62 L. ed. 441, 38 Sup. Ct. Rep. 176; Finance & G. Co. v. Oppenhimer, — U. S. — (Adv. 229), 48 Sup. Ct. Rep. 209, January 23, 1928. The plaintiff cites the case of Buttz v. James, 33 N. D. 162, 156 N. W. 547, as establishing the rule in this jurisdiction in accordance with his contention. There are some expressions in the opinion of Judge Bruce in that case tending to warrant the plaintiff's reliance upon it, but notwithstanding, we think the case does not sustain the plaintiff's position. An examination of the opinion discloses that the majority of the court there held the transfer in question void on the ground that it was fraudulent. Now under our recording statute, § 5594, Comp. Laws 1913, quoted supra, the defendant's mortgage was not "required" to be recorded in order to be valid between the parties and as against creditors not having liens by attachment or judgment. Leonard v. Fleming, 13 N. D. 629, 102 N. W. 308. So, under the decisions of the Supreme Court of the United States above cited, mere failure to record prior to the beginning of the four months' period did not result in a preference within the contemplation of § 60a, supra. See Stocker v. Church, 113 Neb. 639, 204 N. W. 398.

But the plaintiff further contends that, in any event, he can avoid the transfer here involved either on the ground that it was fraudulent or on the ground that the defendant is estopped by reason of his conduct with respect to the recording of his mortgage and assignment to assert the priority of his claim as against the creditors of McKay. As we have heretofore shown the transfer was, in the first instance, not fraud-

ulent, and cannot be avoided on that account. So far as the estoppel operates against the defendant, it does so only in favor of those innocent third parties who acted to their prejudice by reason of the wilful with-holding of the papers from the record; that is, the estoppel operates only in favor of Golden Valley county and the Lone Tree school district. The effect of the estoppel is not to render the mortgage and the assignment void or even voidable. It simply postpones their priority to the rights of Golden Valley county and the school district.

Now the plaintiff as trustee assumes to be clothed with the power to vindicate the rights of all the creditors of his bankrupt, including both Golden Valley county and the Lone Tree school district, as the same existed on June 10th, 1924, when the petition was filed. If so,—we need not determine this point since both the county and the school district acquiesced in his bringing this action—the effect of the adjudication was to put him in the same position that the county and the district would hold had they acquired liens by judgment or attachment as of that date. And since the estoppel operates to postpone the defendant's mortgage to their rights only, and not to the rights of all of the creditors, the plaintiff can be in no better position as against the defendant than they would occupy. Their claims against the estate are contingent only. The amounts thereof will be determined by the dividends that are paid on account of their several deposits out of the estate of the insolvent First National Bank of Beach. To that extent their claims are prior to the claim of the defendant except as herein-after stated.

It appears that in 1925 the defendant paid the taxes assessed against the premises in question for the years 1923 and 1924. He foreclosed his mortgage in 1926. He now contends that by reason of these facts the plaintiff cannot invoke an estoppel against the defendant's claim under the McKay mortgage. While we cannot agree with this contention, nevertheless we think that the defendant has a prior claim for the amounts paid. It is only just and equitable that he should have. The taxes were properly paid by the defendant under the provisions of the statute, § 2211, Comp. Laws 1913, and having thus paid them the plaintiff as mortgagee is entitled to a first lien on the property for the amount thereof. Such payments were for the benefit not only of the mortgagee but also of the mortgagor and his estate and had the effect of conserving

56 N. Dak.—38.

the property. Therefore the defendant must be held to have a first lien upon the property for the amount of such payments and interest. See Baird v. Fischer, — N. D. —, 220 N. W. —.

It follows from what has been said that the judgment of the district court from which the appeal was taken must be modified; that the defendant be adjudged to have a first lien upon the real property involved for the amount of taxes paid by him with interest from their respective dates of payment at the legal rate; that the plaintiff Hart be adjudged to have good and valid liens, subject only to the lien for taxes heretofore awarded, for the amount of the claims of Golden Valley county and the Lone Tree school district after crediting thereon such payments as shall be made in the way of dividends on account of the First National Bank of Beach; and that the title be quieted in the defendant Casterton subject to such liens.

The case will be remanded to the district court with directions to enter judgment accordingly.

BURKE, BURR, CHRISTIANSON, and BIRDZELL, JJ., concur.