JAMES HART, Trustee of the Estate of Edward J. Curtin, Bankrupt, Respondent, v. C. J. WEISER, R. A. Engbertson, and L. B. Whitney, Trustees, Mrs. Florence Thomas, and the Northern Trust Company, a Corporation. C. J. WEISER, R. A. Engbertson, and L. B. Whitney, Trustees, Appellants.

(224 N. W. 308.)

Opinion filed February 18, 1929.   Rehearing denied April 6, 1929.

*Theodore B. Torkelson* and *Lawrence, Murphy, & Nilles,* for appellants.

853

*John Keohane* and *Albert M. Kuhfeld,* for respondent.

BIRDZELL, J. This is an action by the plaintiff, as trustee of the estate of Edward J. Curtin, bankrupt, to set aside certain transfers of a half section of land in Golden Valley county and to quiet title to the same. From a judgment in the plaintiff's favor and from an, order denying the defendants' motion for judgment non obstante or for a new trial the defendants have appealed and demand a trial de novo. The facts essential to an understanding of the issues presented here for decision may be most conveniently stated in two chapters: First, those which took place in Decorah, Iowa, where the bankrupt resided; and, second, the facts which transpired at Beach in Golden Valley county, North Dakota, where the bankrupt and associates conducted business incidental to the operation of the First National Bank of Beach.

The Citizens Savings Bank had held in the name of Curtin a mortgage on this half section of land which was foreclosed in Curtin's name and he disclaimed ownership both of the mortgage and of the property. At the time the title became vested in Curtin—and no party to this litigation traces title farther back—he was president and owner of the controlling stock in the Citizens Savings Bank of Decorah, Iowa; also, vice president, director and stockholder of the First National Bank of Beach, North Dakota. The land was conveyed to Curtin by a sheriff's deed in April, 1919, which deed was promptly recorded in Golden Valley County. There were no liens or conveyances subsequently recorded until February 28, 1924, but meanwhile the following transactions had taken place in Decorah, Iowa: Within a few days after obtaining the sheriff's deed, Curtin and wife executed a deed conveying the land to the bank. They also executed another deed for no consideration conveying the land to Louise M. Lurton, who on the same day executed and delivered to Curtin a first mortgage on one quarter section for $3,000 and a first mortgage on the other quarter for $3,500. She likewise executed on the same day separate deeds conveying each quarter section to the Citizens Savings Bank of Decorah. These deeds and mortgages were delivered to the bank and remained there. However, on December 8, 1919, the mortgages and notes of Louise M. Lurton were transferred and assigned to Mrs. Florence Thomas of Decorah. From the time of the assignment to Mrs. Thomas until January 17, 1924, when the Citizens Savings Bank of Decorah closed, the bank carried Mrs. Thomas' note for $6,225, holding the two mortgages aggregating $6,500 as collateral. When the Citizens Savings Bank of Decorah closed a situation was created in which the other three banks there located were concerned. The Winneshiek County State Bank, of which the defendant Weiser was president, purchased certain of the assets of the Citizens Savings Bank for approximately $270,000, which was paid partly in cash and partly by the assumption of deposit liability in the Citizens Savings Bank.

This purchase was evidenced by a written agreement which identified the assets purchased and made provision for carrying out the details of the arrangement. The written contract likewise contained references to other arrangements that were being made to administer the remaining assets and take care of the obligations of the failed bank.

It recited "Whereas as a part of said agreement of purchase and sale between the said Citizens Savings Bank of Decorah, Iowa, and the said Winneshiek County State Bank of Decorah, Iowa, certain direct and collateral agreements have been made by certain individuals and corporations, which said agreements are by mutual understanding and agreement made a part of this contract of purchase and sale," etc. It also contained this provision: "It is understood by all parties to this agreement that of the deposits now on the books of said Citizens Savings Bank there shall be released by the depositors a total sum of not less than $74,351.50." There was subjoined as Exhibit H a list of depositors waiving, and then it was provided: "In the event the total amount so waived by the depositors of the Citizens Savings Bank shall exceed the sum of $74,351.50, that then in that event the Winneshiek County State Bank will pay into the trust fund, created in accordance with the terms and provisions of the trust agreement annexed hereto, an amount of cash equal to the difference between the amount of deposits so waived and the said sum of $74,351.50." It provided for the payment of $100,000 in cash to the Winneshiek County State Bank, of which sum the Winneshiek County State Bank itself should contribute $50,000, the Decorah State Bank $30,000, and the National Bank of Decorah $20,000. It recited that there has been signed in connection herewith a trust agreement which trust agreement relates to the remaining assets of the Citizens Savings Bank and the transfer thereof to a trust estate. Said trust agreement also provides for the payment of the remaining liabilities of the Citizens Savings Bank not assumed by the Winneshiek County State Bank and further provides the consideration flowing to the several banks advancing money as herein provided and the depositors waiving as herein provided. Said trust agreement is subjoined hereto as Exhibit J and is by reference made a part hereof the same as though set out at length herein." The trust agreement refers to the contract above stated as a certain *principal agreement* between the Citizens Savings Bank and the Winneshick County State Bank, to which the declaration of trust is attached as a contemporaneous agreement. It recites that the obligations of the savings bank, as shown by its books, equal the sum of $493,626.92; that the total value of the assets taken over by the Winneshiek County State Bank equals the sum of $319,275.42, creating a

difference of $174,351.50, which is to be made up by the cash payments of $50,000 by the Winneshiek County State Bank, $30,000 by the Decorah State Bank, $20,000 by the National Bank of Decorah and certain waivers of deposits; and that in consideration of the payment of these sums and the waivers it was desired to convey the remainder of the assets to the parties advancing the money and executing the waivers. It was agreed that the Citizens Savings Bank should transfer to the trustees all of the assets not included in those transferred to the Winneshiek County State Bank under the principal agreement; that they should constitute a trust estate to be administered by the trustees who should proceed to liquidate the estate as rapidly as to them might seem for the best interests of the estate. This agreement was signed by the directors of the Citizens Savings Bank as party of the first part, by the three remaining banks in Decorah as parties of the second part, by the waiving depositors as parties of the third part, and by Whitney, Engbertson and Weiser, as trustees, parties of the fourth part, the parties of the fourth part having been named trustees by the parties of the second part pursuant to the trust agreement, each bank being entitled thereby to name one trustee and each naming its president. While there was no real estate included in the schedule of assets transferred under the trust agreement, the terms of the agreement are broad enough to include every species of property owned by the bank and not transferred to the Winneshiek County State Bank, and specific authority was given to the trustees to execute conveyances of real property. Of even date with the principal agreement and the trust agreement, namely, February 13, 1924, the Citizens Savings Bank conveyed to the trustees the land in question. On February 28, 1924, the trustees caused to be recorded in the office of the register of deeds in Golden Valley county, North Dakota, the deed from Curtin and wife to Louise Lurton, the deed from Louise Lurton to the Citizens Savings Bank, the two mortgages of Louise Lurton to Curtin and their assignments to Florence Thomas. They did not record the deed from the Savings Bank to them until October 6, 1924. Hence, from February 28, 1924, until October 6, 1924, the title stood of record in the name of the Citizens Savings Bank, subject to two outstanding mortgages aggregating $6,500 in favor of Florence Thomas, assignee; and up to that time it had stood in the name of Curtin.

On June 10, 1924, creditors of E. J. Curtin filed a petition in the United States district court of Iowa to have Curtin adjudged an involuntary bankrupt. He was so adjudged in July, 1926. The following September Hart qualified as trustee of his bankrupt estate and brings this action.

During the time from 1919 to 1924 when the record title to the land was in Curtin, he was vice president, director and stockholder in the First National Bank of Beach, North Dakota, and a stockholder and officer in the First National Bank of Sentinel Butte, North Dakota. The taxes on the land in question were paid in his name. The land was farmed by a tenant under an oral lease from year to year, the tenant dealing with one Attletweed, president of the First National Bank of Beach, who acted as agent for Curtin. In 1923 the First National Bank of Beach desired to qualify as a depository of the public funds of Golden Valley county and of Lone Tree school district. The county commissioners had passed a resolution to the effect that personal bonds of nonresidents would not be taken as surety for county deposits unless the nonresident surety should own real estate in the state or in the county of Golden Valley to the extent of twice the value of the sum for which he became surety, and further requiring personal sureties on bonds to show the description and number of acres of real estate standing in their names of record. Curtin and McKay in February, 1923, qualified on a county depositary bond, in the sum of $50,000, of the First National Bank of Beach (see Hart v. Casterton, 56 N. D. 581, 218 N. W. 644), Curtin furnishing a statement showing him to be the owner of the land in question. The bond was accepted and the bank designated as a depository. Curtin qualified in a similar manner upon a depositary bond of the First National Bank of Beach in favor of Lone Tree school district. The First National Bank of Beach closed on the same day as the Citizens Savings Bank of Decorah, Iowa, namely, January 17, 1924, at which time the county of Golden Valley had on deposit therein about $31,496.88 and Lone Tree school district the sum of $598.85. Very soon after the bank closed, an action was started by Golden Valley county against Curtin as surety on the depositary bond and an attempt was made to levy an attachment upon the land involved, the notice of levy being filed and recorded on January 24, 1924. The attachment proceedings

were later dismissed. See Golden Valley County v. Curtin, 52 N. D. 372, 203 N. W. 189.

The instruments previously referred to, except the deed from the Citizens Savings Bank to the trustees which was not recorded until October 6, 1924, were, as previously stated, recorded on February 28, 1924, and within four months thereafter, namely, on June 10, 1924, some creditors of Curtin, including Lone Tree school district, filed an involuntary bankruptcy petition against him in Iowa. Later both Golden Valley county and Lone Tree school district filed their claims arising out of these bonds with the referee in bankruptcy and they were approved and allowed. The aggregate claims against the bankrupt estate are more than $132,000 and the assets in the hands of the plaintiff as trustee are practically nil. Owing to the insolvent condition of the First National Bank of Beach, the claims of Golden Valley county and Lone Tree school district will not be paid in full out of its assets.

Since the decision of this court in the case of Hart v. Casterton, supra, holding that the mere failure to record an instrument given prior to the four-month period preceding bankruptcy and its later recordation within the four-month period does not result in a preference within the contemplation of § 60a of the National Bankruptcy Act, as amended (U. S. C. title 11, § 96a), the respondent does not rely upon the withholding of conveyances from the record until within the four-month period as constituting an illegal preference. The respondent, however, does contend upon this appeal that as trustee in bankruptcy he may claim the benefit of any estoppel in favor of Golden Valley county and Lone Tree school district as against the Citizens Savings Bank and its creditors or trustees acting in behalf of the latter and that he, the respondent, has an equity in the property in question superior to that of the trustees. The respondent also contends that the property was in fact the property of Curtin and did not belong to the Citizens Savings Bank. On the other hand, the appellants contend that the property at all times belonged to the Citizens Savings Bank; that they purchased the same in good faith and for value without notice of any equity existing in favor of either Golden Valley county or Lone Tree school district; that since they did not either actively or passively assist Curtin in representing himself to be the

owner of the property, thereby inducing Golden Valley county and Lone Tree school district to treat him as a responsible individual to their prejudice, they are not bound by any estoppel that might exist against him or the Citizens Savings Bank.

There is no finding of fact that the property belonged to E. J. Curtin. The finding merely is that he was the record title owner and in possession. There is, however, a conclusion of law predicated upon the supposition that the Citizens Savings Bank did not hold either legal or equitable title to the premises nor any enforcible lien thereon. The evidence in the record is to the effect that the Citizens Savings Bank of Decorah and the First National Bank of Beach had transactions with the former owner of the land, one Stockwell, taking security from him running to Curtin; that such moneys as were loaned to Stockwell were the moneys of these banks; that title to the securities was taken in the name of Curtin for convenience and negotiation; that as the securities were negotiated the banks were repaid; that the original Stockwell mortgage which was foreclosed had been taken over from a client of the Citizens Savings Bank of Decorah, who was thus reimbursed by the bank, and that the mortgage was foreclosed in the name of Curtin for convenience. The testimony of both Curtin and McKay to that general effect is undisputed. We are of the opinion that upon this record it must be held, as a matter of fact, that the mortgage which was foreclosed and which ripened into title was the property of the Citizens Savings Bank of Decorah.

The next question presented, then, is whether or not when the defendant trustees acquired this property in February, 1924, they acquired a title which would be superior to any equity existing in favor of Golden Valley county or Lone Tree school district. Reference to the contracts which were made soon after the closing of the Decorah bank will show that both the depositors in the closed bank and the remaining banks entered into arrangements which were legally detrimental to them upon the security of the assets of the failed bank, the Winneshiek County State Bank taking over a large amount of deposit liability along with assets which it selected, and it, together with the depositors and the two remaining banks, contributing cash and waivers of deposits with the understanding that the assets not transferred to the Winneshiek County State Bank should be administered as a trust estate

of which they should be the beneficiaries. In other words, contributions of cash and releases of indebtedness were furnished as a present consideration for the transfer to the trust estate of the remaining assets of the Citizens Savings Bank. Without doubt this constitutes value. 2 Pom. Eq. Jur. 4th ed. § 747. There is no evidence in this record that the parties to this trust arrangement, at the time of consenting thereto and parting with value, knew that any equities existed in favor of any third parties on account of the fact that the record title to the land up to that time had stood in the name of Curtin. There was no actual notice of any equity in favor of Golden Valley county or Lone Tree school district. If they are to be charged with notice, it is wholly on account of the record of notice of levy of an attachment which was dismissed. Golden Valley County v. Curtin, 52 N. D. 372, 203 N. W. 189, supra. At most this would be constructive notice of a lien. But as there was no lien, recorded notice of levy would be constructive notice of nothing. The fallacy in the argument of the respondent lies in the assumption that a recorded notice of levy, which if valid would operate as constructive notice of a lien, may, though the lien be invalid, operate as either actual or constructive notice of an equity existing in favor of the party who had unsuccessfully asserted the lien. The defendants show a perfect chain of title from the legal owner of the property. They show that they paid value for the property without actual notice of any outstanding prior equities. But, even if it be assumed that they had either actual or constructive notice of the levy, this would not necessarily preclude them from becoming purchasers of the legal title in good faith and in circumstances that would enable them to hold it free of any claimed equities existing in favor of the county and school district.

The failure of the Decorah bank to record the instruments showing its title only rendered the transfer to it void as against "any attachment levied" on the property (Comp. Laws 1913, § 5594), and as previously stated no attachment had been levied by reason of the invalidity of the warrant. But, assuming, without holding, that the notice of levy nevertheless was sufficient to put a subsequent purchaser from the bank on inquiry as to the rights claimed in the attachment suit, there is nothing in this record to show that the plaintiff in the attachment suit had set out any special circumstances which would create an

estoppel on the part of the bank to have asserted its title. For aught that appears in this case, the sole ground for the attachment might have been the nonresidence of the defendants, Curtin and McKay. No reason is apparent why more than this would have been stated as a ground for the attachment. In the absence of a showing by the respondent that the attachment suit disclosed the circumstances in which the true owner of the property had become estopped to assert title as against the attaching creditors, there can be no merit in the contention that the attachment suit served notice of such an equity. It would, at most, ordinarily only apprise a subsequent purchaser of an attempt by a creditor of the record owner to perfect a lien by levy as against which the true owner would not be permitted to assert title only because of his failure to record his conveyance. The attachment failing, the lien fails. So far as the record in this case shows, any other creditor of Curtin levying a valid attachment before the recording of the bank's title and after the first notice of levy would have acquired a valid lien and one superior to the claim of the county. There is no reason why creditors of the true owner who to protect themselves take conveyances which are recorded before any attachment lien, do not have a right superior to that of a creditor of the record owner who has levied an invalid attachment. The unrecorded conveyance to the bank is not void as to subsequent creditors of the record owner. It is only void as to judgment creditors and those levying attachments. We hold that a subsequent purchaser from the true owner who takes legal title, even with notice of an invalid attachment, does not take with notice of all the equitable circumstances in which the claim forming the basis of the attachment suit originated.

It only remains to apply the well established principles of law to the situation presented. The law is "that when a purchaser of property for a valuable consideration, and without notice of a prior equitable right to or interest in the same subject-matter, obtains the legal estate in addition to his equitable claims, he becomes, in general, entitled to a priority both in equity and at law." 1 Pom. Eq. Jur. 4th ed. § 417.

As to the effect of notice or want of notice of an outstanding equity at the time of the purchase, the same author (2 Pom. Eq. Jur. 4th ed. § 591) says:

". . . a person who acquires a legal title or an equitable title or interest in a given subject-matter, even for a valuable consideration, but with notice that the subject-matter is already affected by an equity or equitable claim in favor of another, takes it subject to that equity or equitable claim. On the other hand, *a person who has acquired a title, and paid a valuable consideration, without any notice of an equity actually existing in favor of another, may by that means obtain a perfect title, and hold the property freed from the prior outstanding equity."* (Emphasis is ours.)

The adjudicated cases supporting this principle are too numerous to be cited here. There being no facts in this record from which it can be inferred that the defendants at the time of acquiring the property had knowledge of the equitable claims of Golden Valley county and Lone Tree school district, or that they had knowledge of facts sufficient to put them on inquiry regarding the equitable origin of these claims, the defendants hold their title freed from such prior outstanding equities.

It is obviously unnecessary for us to consider the question argued in the briefs as to whether or not the trustee in bankruptcy may pursue a remedy which at best is available only to one or more favored classes of creditors.

The judgment appealed from must be reversed and a judgment entered quieting title in the defendants. Reversed and remanded.

BURKE, Ch. J., and CHRISTIANSON, NUESSLE, and BURR, JJ., concur.