JAMES HART, Trustee of the Estate of Edward J. Curtin, Bankrupt, Respondent, v. PAT RONAN, J. P. Burns, and Ellen Law Warner, Appellants.

(226 N. W. 620.)

Opinion filed August 16, 1929.

*Theo. B. Torkelson,* and *Crawford, Cain & Burnett,* for appellants.
*Keohane* and *Kuhfeld,* for respondent.

CHRISTIANSON, J. This is an action to quiet title to a quarter section of land in Golden Valley county in this state. The trial court rendered judgment in favor of the plaintiff and the defendants have appealed and demand a trial anew in this court.

The material facts are not in dispute and are substantially as follows: In 1909 Edward J. Curtin, a resident of Decorah, Iowa, acting for himself and Pat Ronan, J. P. Burns, H. A. Warner, G. F. Baker and J. B. McKay, all residents of Decorah, Iowa, acquired a contract for deed to the premises in question for an agreed purchase price of $5,600. Subsequently, a written contract was entered into signed by Curtin and one Holven for the sale of a portion of the tract to Holven for fair ground purposes; but this contract was later abandoned or surrendered and all interest held by Holven in the premises reverted to and became revested in Curtin, who thereafter held it in accordance with the original purchase arrangement. On November 27, 1909, Curtin and the five parties named above entered into a written agreement evidencing the business arrangement between them. Six copies of the contract were made, one being delivered to each of the parties. According to the terms of the written agreement, each of the six parties agreed to pay one-sixth of the purchase price, and further

agreed that when the property was eventually disposed of each should receive one-sixth of the net proceeds. It was further agreed that the property should not be sold until four of the signers to the agreement should notify Edward J. Curtin in writing that they desired the property sold and on what terms. An assignment of the contract for deed had been taken in the name of Curtin, and the agreement between the parties apparently recognized this fact. The agreement between the said parties further provided that each of them should defray one-sixth of all expenses and that they should share equally in the profits. On October 20, 1911, the land was conveyed to Curtin by the holders of the fee title and the deed was recorded in the office of the register of deeds of Golden Valley County on November 7, 1911. Interim the execution of the deed and the recording thereof, to-wit, on October 28, 1911, Curtin and his five associates entered into a further written agreement which, according to its terms, was "supplementary to the one executed by such parties on November 27, 1909." This agreement recites that while the title to the land is taken in the name of Edward J. Curtin that "he is only a trustee for the actual owners thereof, to-wit: H. A. Warner, J. B. McKay, G. F. Baker, Pat Ronan, J. P. Burns, and Edward J. Curtin," each owning an undivided one-sixth thereof. On March 9, 1920, Edward J. Curtin purchased the interest of G. F. Baker. The record title to the lands remained at all times in the name of Edward J. Curtin until May 24, 1924, when a warranty deed executed by Curtin and his wife conveying the premises to the defendants, Pat Ronan, J. P. Burns and Ellen L. Warner, was recorded. (Ellen L. Warner was the widow of H. A. Warner, the latter having died and his interest in this property having been devised to his wife, Ellen L. Warner). The undisputed evidence shows that the purchase price of the land was paid by the parties named with money borrowed from the Citizen's Savings Bank of Decorah, Iowa, of which bank Edward J. Curtin was president. The first note was signed Beach Fair Grounds Company. The transaction was criticised by one of the bank examiners on the ground that as the president and cashier of the bank were interested and the note in part represented their liability that if the note were carried by the bank it ought to be listed as a liability of such officers. In order to obviate the objection of the bank examiner a new note was made signed by Pat

Ronan, J. P. Burns and H. A. Warner. Curtin and McKay in turn executed and delivered to these three parties an instrument in writing whereby they agreed to and did assume as to these makers liability for their respective shares of the indebtedness evidenced by the note. In 1910 the defendant Ronan sent two of his men with an outfit to break the land. Thereafter the land was cropped and each year Curtin accounted to his associates for the amount of receipts and expenditures. The rents and profits were applied upon the indebtedness to the bank and a new note executed by the former makers for whatever balance remained unpaid. On July 28, 1919, Curtin executed a warranty deed for the land leaving the name of the grantee in blank, and placed such deed in the file pertaining to this land in the vault of the Citizen's Savings Bank of Decorah where it was kept until at or about the time that bank was closed (January 17, 1924). Curtin testified that he executed the deed and placed it as stated so as to protect the signers of the note against loss. When the Citizen's Savings Bank of Decorah closed, the papers, including the deed, were delivered to Ronan. The names of the signers of the note were inserted as grantees and the deed forwarded to North Dakota where it was duly recorded in the office of the register of deeds of Golden Valley county on May 24, 1924.

Edward J. Curtin was an officer and the principal stockholder of the First National Bank of Beach. In 1923 that bank was a depositary of funds of Golden Valley county and of the Lone Tree school district in that county. The First National Bank of Beach, desiring to continue, or to be redesignated as such depositary, transmitted to the county commissioners of Golden Valley county, a depositary bond in the sum of $50,000. About the same time the bank also transmitted a depositary bond to Lone Tree school district. Curtin was a surety on both bonds. In justifying on these bonds Curtin made an affidavit that he was a free-holder of Golden Valley county. Attached to each of the bonds was a statement purporting to describe the real property owned by Curtin in Golden Valley county. There is no evidence showing who attached these statements and Curtin testifies positively that he did not attach them, and that he at no time represented to any of the officers of either the county or the school district that he owned the land in question here. He further testified that he informed one of the members of the board of county commissioners that he did not own the

land in suit but that it was owned by a "syndicate" in which a number of persons were interested. The land in question, however, was listed on the statement attached to the bonds. The county commissioners of Golden Valley county sometime prior thereto had adopted a resolution to the effect that they would not accept depositary bonds executed by personal sureties where such sureties were non-residents unless such sureties were shown to be free-holders of the county. According to the testimony of the chairman of the board of county commissioners they caused an examination of the records in the office of the register of deeds to be made to ascertain whether the real property listed in the statement attached to the bond as belonging to Curtin did belong to him, and they accepted the bond only after they found this to be so. Similar testimony was given by one of the officers of the school district as regards the depositary bond given by the bank to the school district. The depositary bonds were accepted and the First National Bank of Beach was designated a depositary for the county and school district. On or about January 17, 1924, the First National Bank of Beach was closed by the comptroller of the currency and on January 19, 1924, the Citizen's Saving Bank of Decorah was closed by the banking department of Iowa. At the time the First National Bank of Beach was closed both Golden Valley county and the Lone Tree school district had deposits therein secured by the depository bonds executed by Curtin. At the time of the trial of this action, after crediting dividends paid by the receiver of the bank, the deposit of the county exceeded $25,000, and that of the school district $500. The assets of the bank are insufficient to discharge its obligations and the depositors will all suffer loss, the amount of which cannot be definitely ascertained at this time.

On June 10, 1924, an involuntary petition in bankruptcy was filed against Curtin. He was later adjudged a bankrupt and the plaintiff Hart was elected trustee in bankruptcy. The claims of Golden Valley county and Lone Tree school district were duly proved and allowed. The plaintiff Hart brings this action to quiet title, claiming that the land in question is the property of Curtin; that the deed from Curtin to the defendants constituted a fraudulent preference, and is void, and that in any event the defendants are estopped from claiming any inter-

est in the land as against Golden Valley county and the Lone Tree school district.

According to the undisputed evidence the property involved in this action was never the individual property of Curtin. It was the property of what is denominated in the evidence sometimes a "syndicate" and at other times a "partnership," of which Curtin was a member. Whether the association be deemed a general partnership (Comp. Laws 1913, § 6386), or what is commonly denominated a joint adventure, the legal rights and obligations of the parties are governed by substantially the same rules (2 Rowley, Partn. § 975); and the fact remains that the property did not belong to Curtin and that he held the legal title thereto merely in trust (Comp. Laws 1913, §§ 6395–6397; 2 Rowley, Partn. § 979); and each member might require the property to be applied to the discharge of the debts of the partnership or joint adventure and each had a lien upon the shares of the others for this purpose. (Comp. Laws 1913, § 6393; Betts v. Letcher, 1 S. D. 182, 199, 46 N. W. 193; 2 Rowley, Partn. § 889). The deed executed by Curtin and subsequently delivered with implied authority to insert the names of the grantees did not convey his property. The property conveyed was that of the partnership or syndicate of which Curtin was a member and which he held in trust for the members of such syndicate or partnership. The transfer which is avoided by the bankruptcy act is one which a bankrupt makes of his own property and which operates to prefer one creditor over others. Bailey v. Baker Ice Mach. Co. 239 U. S. 268, 274, 60 L. ed. 275, 286, 36 Sup. Ct. Rep. 50. A trustee in bankruptcy does not acquire title to property the legal title to which is in the bankrupt as trustee (7 C. J. 130.); and the trustee in bankruptcy of an individual partner has no right to interfere with the firm assets or assume possession of the property of the partnership without the consent of the other members of the partnership. 6 Remington, Bankr. 3d ed. p. 388, § 2906.

It is contended by the plaintiff that under the amendment to § 47a of the bankruptcy act by the act of June 25, 1910 (chap. 412, 36 Stat. at L. 838, U. S. C. title 11, § 75) the plaintiff as trustee in bankruptcy became vested with the legal title held by Curtin; that the transfer is a nullity and that the defendants are barred from asserting rights not appearing of record. The section in question provides that a trustee

in bankruptcy, "as to all property in the custody, or coming into the custody, of the bankruptcy court, shall be deemed vested with all the rights, remedies and powers of a creditor holding a lien by legal or equitable proceedings." Chapter 412, 36 Stat. at L. 838, 840, U. S. C. title 11, § 75. The section does not have the effect claimed by the plaintiff. The United States Supreme Court has specifically held that under this section the status of the trustee as a creditor holding a lien exists, and his rights, limitations and powers are determined, as of the date of the filing of the petition, and are not retroactive. Bailey v. Baker Ice Mach. Co. supra; Carey v. Donohue, 240 U. S. 430, 60 L. ed. 726, L.R.A.1917A, 295, 36 Sup. Ct. Rep. 386; Martin v. Commercial Nat. Bank, 245 U. S. 513, 62 L. ed. 441, 38 Sup. Ct. Rep. 176; Big Four Implement Co. v. Wright, 47 L.R.A. (N.S.) 1223, 125 C. C. A. 577, 207 Fed. 535. Whatever rights the plaintiff has, as trustee representing the creditors of the bankrupt, by virtue of the amendment of June 25, 1910, came into being on June 10, 1924, and on that date Curtin was not the record owner of the land. The record owners were the three persons named as defendants in this action. They, of course, were not absolute owners; they held, and continue to hold, the legal title in trust for the association or partnership to whom it belongs. Curtin was a member of such association or partnership, and the plaintiff has succeeded to whatever rights Curtin had as such member and no more; and those rights are, of course, subject to all the correlative obligations on the part of Curtin.

The facts in this case do not, in our opinion, estop the defendants from showing the actual ownership of the land. The facts here are quite different from those in Hart v. Casterton, 56 N. D. 581, 218 N. W. 644. In that case a mortgage was withheld from record for the purpose of enhancing the credit of the record owner. There was no such arrangement in this case. At the outset Curtin and his five associates entered into a perfectly legitimate business transaction; title to the land was taken, as is frequently done, in the name of one member of the partnership or joint adventure. Here there was no withholding from the record of an instrument by those to whom it had been delivered. Just as soon as the deed was delivered the defendants caused it to be recorded. Furthermore it seems quite clear that other considerations besides Curtin's apparent ownership of the land

were responsible for the acts of the county commissioners and of the trustees of the school district in approving the depository bonds executed by Curtin as surety. The affidavit of justification upon such bonds does not purport to show that Curtin owned any stated quantity of land in Golden Valley county or that the land owned by him there was of any particular value. The statement in the affidavit is merely to the effect that he is a free-holder of Golden Valley county. There is nothing in the affidavit to indicate either the quantity or value of the land. There was no requirement that Curtin should continue to hold title to the land or that the bond should cease to be effective in the event Curtin disposed of the land. So far as the requirement of the county commissioners and school trustees was concerned Curtin might, immediately after the bond was accepted, have encumbered, or sold and transferred all of his land in Golden Valley county. At the time the bonds were executed Curtin was a surety upon a depository bond formerly given by the bank and he was reputed to be a man of considerable wealth. When all the facts and circumstances are considered it is quite apparent that the officers of the county and school district deemed Curtin to be a responsible surety not because of the representation that he owned the particular tract of land in question but because they believed him a man of wealth.

It follows from what has been said that the judgment appealed from must be and the same hereby is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

BURKE, Ch. J., and BIRDZELL, NUESSLE, and BURR, JJ., concur.