AMERICAN STATES INSURANCE COM-
PANY, an Indiana Corporation,
Plaintiff and Cross-Defendant,

v.

Fred J. STACHOWSKI, Individually and
d/b/a Nankin Sand Company, De-
fendant and Cross-Plaintiff.

Civ. A. No. 24612.

United States District Court
E. D. Michigan, S. D.

Nov. 22, 1965.

Sullivan, Sullivan, Hull & Ranger, De-
troit, Mich., for plaintiff.

Garan, Lucow & Miller, Detroit, Mich.,
for defendant.

McCREE, District Judge.

This is an action for a declaratory
judgment instituted by plaintiff, Ameri-
can States Insurance Company, praying
for a declaratory judgment of no cover-
age in connection with an insurance pol-
icy.  The defendant, Nankin Sand Com-
pany, hereinafter referred to as the in-
sured, has filed a cross-complaint praying
for a declaratory judgment establishing
insurance coverage.  In December, 1960,
and at all times relevant hereto, the in-
sured had in full force and effect with
American States Insurance Company, a
manufacturers and contractors liability

policy No. ML 424–040. The pertinent provisions of the policy are as follows:

(PRINTED PORTION)

## "I. INSURING AGREEMENTS

*Coverage B—Property Damage Liability*: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

## DEFINITION OF HAZARDS

*Division 1—Premises—Operations*
The ownership, maintenance or use of premises, and all operations.

"II. *Defense, Settlement, Supplementary Payments*: With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

(PRINTED AND TYPEWRITTEN PORTION)

"The insurance afforded is only with respect to such and so many of the following coverages and divisions thereunder as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage and division shall be as stated herein, subject to all the terms of this policy having reference thereto.

\* \* \*

Item 2.   Business of Insured
    Sand Digging and Hauling
    (TYPEWRITTEN)

\* \* \*

Item 4.   Description of Hazards
    Division 1.   Premises—Operations
    Sand or Gravel Digging—no canal, sewer, cellar excavation or underground mining #2483 (TYPEWRITTEN) (Specific premium charges following thereafter.)"

The insured was engaged in sand and gravel digging operations on its own property located at 7815 Newburgh Road, Plymouth, Michigan. A contract was entered into between the insured and Bantam Oil Company, wherein, in substance, the insured agreed to dig two ponds on its premises approximately fifty feet by one hundred feet by two feet deep, rectangular in shape, and to bank the sand removed from the ponds in a careful and prudent manner around the ponds by way of a retaining wall to the height of approximately three to four feet. Bantam Oil Company intended to store oil in these ponds and, upon their completion, did in fact store oil therein. In December, 1960, the banks surrounding the aforedescribed ponds collapsed and gave way in such a manner as to cause the accumulated oil to flow upon the adjoining property of Clyde E. Smith and Beulah Smith, who have claimed substantial monetary damage as a result thereof.

The Smiths then instituted legal proceedings against the insured in the Wayne County Circuit Court, Case No. 331–770. Their complaint, as amended, alleges the following:

Plaintiffs further aver that the defendant, Frank J. Stachowski, individually and d/b/a Nankin Sand Company while acting for himself and for the other defendants herein in constructing and making said ponds, *dug up the sand and piled it up as banks for and around said ponds in a loose, insecure and negligent manner and so as to permit the banks to collapse,* break open, push out and give way because of the weight and pressure of the oil,

allowing the oil to escape from said ponds proximately causing the damages to the plaintiffs as herein stated." (Emphasis supplied.)

Cross motions for summary judgment were filed by the respective parties hereto which raised the issues of coverage under the terms of the policy and coverage because of waiver and estoppel in connection with the defense of the Smith litigation in the Wayne County Circuit Court by the insurance carrier. The court ruled in favor of the plaintiff insurance carrier at the time of oral argument on the issue of policy coverage, but requested that briefs be filed on the issue of waiver and estoppel. Subsequently, in a written opinion, the court ruled that plaintiff was not estopped to deny coverage on the policy by its participation in the state court action. The instant motion for rehearing presents only the issue of policy coverage and therefore this opinion will be limited to that issue. Since there is no genuine dispute as to any material fact, the issue is properly before this court on cross-motions for summary judgment.

The issue of coverage raises in fact two independent questions which may be stated as follows:

(1) Whether the complaint filed by the Smiths in the Wayne County Circuit Court against the insured alleging that the insured "dug up the sand and piled it up as banks for and around said ponds in a loose, insecure and negligent manner and so as to permit the banks to collapse * * * allowing the oil to escape from said ponds proximately causing the damages [to the adjacent land]" requires the insurance company under the terms of the policy involved herein to provide legal defense to such action.

(2) Whether the insurance carrier is liable to indemnify the insured for any amount which the latter may be required to pay the Smiths for damages caused by the escape of the oil stored on the insured's property.

■ The jurisdiction of the court in this matter is founded upon diversity of citizenship. None of the issues herein raise questions of federal law. Hence, under the rule set forth in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the law of Michigan must be applied to each of the questions involved herein.

■ The general rule of the duty on the part of an insurance carrier to defend a given cause of action may be stated as follows:

"An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff. Or, as some courts have expressed it, the language of the policy and the allegations of complaint must be construed together to determine the insurer's obligation. The pleading test of what constitutes a cause of action does not control the question of whether a particular loss was excluded from the coverage, and any doubt as to the adequacy of the pleadings to bring the occurrence within the coverage of a liability policy are resolved in favor of the insured * * *.

"On the other hand, ordinarily an insurer cannot be called upon to defend a suit against the insured where the petition or complaint upon its face alleges a state of facts excluded from the policy. * * *

Since the insurer's duty to defend ordinarily is correlative with its duty to pay a judgment which might be obtained against the insured, it is apparent that the insurer has the duty of defending only those actions that are within the terms of the policy, and where there has been no breach of the policy. * * *"

7A Appleman, Insurance Law and Practice, §§ 4683, 4684 (1961).

■ Thus, if liability to indemnify on a risk is clearly precluded by the terms of the policy, then no duty to defend arises on that risk. See Duval v. Aetna Casualty & Surety Co., 304 Mich. 397, 8 N.W.2d 112 (1943); Kramarczyk v. Jontz, 282 Mich. 208, 275 N.W. 822 (1937). If, on the other hand, liability to indemnify on a given risk is clearly required by the terms of the policy, then the duty to defend would arise as to that risk. And, finally, an insurer must defend a suit raising allegations, which if proved, might impose liability to indemnify, but which, if not proved, would not impose liability to indemnify, even if the insured were eventually held liable on a theory of risk not covered by the insurance policy.

The threshhold question which we reach here is whether the allegations in the Smiths' action set forth a theory of risk which is so clearly excluded from coverage under the terms of the policy as to obviate any duty on the part of the insurer even to defend. The thrust of the Smiths' action, insofar as it is pertinent herein, is the allegation that the insured dug up and piled the sand in such a negligent manner as to construct ponds for the storage of oil that were not adequate to perform such function. Thus, the question becomes whether the negligent construction of sand and gravel ponds for the storage of oil should be ruled as a matter of law to be a risk clearly excluded from coverage under the terms of the policy.

The defendant insured contends that the printed portion of the policy which sets forth Definition of Hazards, Division I–Premises—Operations, purporting to cover "the ownership, maintenance or use of premises, and *all operations*," (emphasis supplied) must be read *literally* to cover all operations at the premises of the insured, including the construction of oil storage ponds and the possible escape of oil stored therein. Defendant argues that although the construction and maintenance of oil storage ponds is not a hazard specifically mentioned by the policy, it, nevertheless, must be deemed to be included under the general inclusion referred to above. And, to avoid liability on that risk, the insurer would have had to list it as a specific exclusion.

Plaintiff insurance company, on the other hand, contends that the printed portion of Definition of Hazards is limited in its scope by the statement, also quoted above, that insurance is afforded only as to the risks specifically set forth in the typewritten portion and for which there is a specific premium charge. As noted above, that portion of the policy states the business of the insured as being "Sand Digging & Hauling" and describes the hazard covered under Division I–Premises—Operations as "Sand or Gravel Digging—no canal, sewer, cellar excavation or underground mining." This description of hazard is typewritten and it is the only hazard for which a specific premium is charged. Plaintiff contends that the printed and typewritten portions of the policy do not contradict each other, nor do they create any ambiguity. Its position is rather that the risk assumed by the insurer is limited to the specific hazards enumerated for which a specific premium is charged, just as is clearly stated in the policy itself. And, therefore, since the building and maintenance of oil storage ponds is not a normal incident of the business of sand and gravel digging or hauling, there is no initial coverage for the risk as alleged in the Smith litigation. Thus, without initial coverage of the risk, there is no need for a specific exclusion thereof.

In our opinion, defendant's contention that the policy literally covers "all operations" must fail for the following reasons. The policy itself contains thirty-eight specific, printed exclusions, which immediately limit coverage to something less than all operations. In addition, the typewritten description of hazards also excludes from coverage "canal, sewer, cellar excavation or underground mining." These typewritten exclusions represent risks normally incidental to the

business of sand and gravel digging and hauling for which the insurer refused to assume the risk under the total annual estimated premium of $56.00. Clearly, the policy did not purport to enumerate specifically all possible excluded risks, as that would be an infinite task; rather the policy merely purports to assume the risks ordinarily incidental to the business of the insured, with specific exclusions for those ordinary incidents which were not covered under the premium charged. The exclusions are generally of a more hazardous nature, and as plaintiff suggests in its brief, a higher premium may have been charged to bring them within the coverage of the policy.

■ In construing an insurance policy, or any other contract, the words used should be given their ordinary meaning unless good reason is shown why this should not be done. By applying that test, the policy herein must be read to provide coverage for all risks ordinarily incidental to the stated business and operations of the insured. Of those risks, only the ones specifically excluded are the ones for which the insurer is not liable. This prescription defines the limits of the policy in question.

Ever since the case of Rylands v. Fletcher, L.R. 3 H.L. 330 (1868), courts have recognized the ultrahazardous nature of storing large quantities of liquid on one's property, which if escaped, could cause serious injury to adjacent property. To compensate for this unusually high risk, courts have imposed liability without fault upon the individual who undertakes this kind of activity and thereby exposes others to that risk. It is precisely this kind of risk for which the insured urges us to infer coverage under the policy. However, the court will not rewrite the policy. We will not infer coverage for such an unusually high risk which we find could not even have been reasonably contemplated by the parties themselves.

■ In summary, we find that the construction and maintenance of ponds and the storage of oil therein is not an ordinary incident of the described business of the insured, that it was not mentioned and cannot be inferred as one of the risks covered in the policy, especially in view of its ultrahazardous nature, and that it cannot be held to have been reasonably contemplated by the parties in the formation of the policy. Under these circumstances, we conclude that the insurer clearly has no liability to indemnify the insured for the damage caused by the escape of stored oil, and hence, has no duty to provide a defense to the Smith litigation.

Defendant has cited a recent case wherein the same plaintiff on a policy, identical in its printed portion, unsuccessfully sought to be relieved of coverage. McNally v. American States Insurance Company, 308 F.2d 438 (6th Cir. 1962). That case, however, is simply the converse of the instant one. There the Court of Appeals found that the policy, at a minimum, covered an elevator accident allegedly due to faulty inspecting where the insured's business was described in the typewritten portion as "elevator service" and the operations, under Description of Hazards, were stated as "Elevator Inspecting," and "Elevator erection or repair including incidental operation of elevators for testing purposes," with a specific premium charged as to each operation. In the instant matter, we find that damage resulting from the faulty construction of oil storage ponds in the manner in which it occurred is beyond whatever might be the maximum coverage of the policy where the insured's business is described as "Sand Digging and Hauling" and where the operations, under Description of Hazards, are stated as "Sand or Gravel Digging."

Defendant's motion for rehearing is hereby denied and an appropriate order may be presented in accordance with this opinion.