**In re Keith G. FLATEN and Lana K. Flaten, Debtors.**

**Phillip D. ARMSTRONG, Trustee of the Estates of Keith G. Flaten and Lana K. Flaten, Plaintiff,**

v.

**Marlene L. HUSTAD and Erik R. Hustad, Defendants.**

Bankruptcy No. 84–05080.
Adv. No. 84–7151.

United States Bankruptcy Court,
D. North Dakota.

June 12, 1985.

Phillip D. Armstrong, Minot, N.D., for plaintiff.

Steven C. Lian, Minot, N.D., for defendants.

## ORDER

WILLIAM A. HILL, Bankruptcy Judge.

The Trustee commenced the present adversary proceeding by Complaint filed with the Court on November 29, 1984, seeking recovery of estate property pursuant to sections 544 and 547 of the Bankruptcy Code. The Defendants, Marlene and Erik Hustad, filed on December 12, 1984, their Answer denying that the Trustee is entitled to recovery of the property, contending that the Debtor never had an interest in the property which would have passed to the bankruptcy estate upon the filing of the bankruptcy case. The Court permitted the Trustee to file on May 1, 1985, an Amended Complaint. The Defendants responded by filing an Answer to the Amended Complaint on May 10, 1985. Trial in the above-entitled adversary proceeding was held before the undersigned on May 14, 1985, in Minot, North Dakota. The relevant facts established at trial are, as follows:

## FINDINGS OF FACT

Marlene and Erik Hustad are owners of property located near Stanley, North Dakota, legally described as:

Commencing at a point 100 feet South and 33 feet West of the Northeast corner of the Northeast Quarter of the Northeast Quarter (NE¼NE¼) of Section 29, Township 156 North, Range 91 West, thence due West 194 feet, thence due South 280 feet, thence due East 194 feet, thence due North 280 feet to the place of beginning, including improvements thereon consisting primarily of a bar and cafe, two cabins and a wash house, together with furnishings and equipment, which property is known as TWO–WAY INN BAR AND CAFE.

The Hustads acquired the property through a contract for deed entered into between themselves and Alfred W. Jewett and Ramona T. Jewett on December 22, 1975. The Hustads in turn entered into an agreement to sell the property to Keith G. Flaten, Lana K. Flaten, Milfred O. Thompson and Claire I. Thompson by written agreement dated February 5, 1980. The agreement specifically provided in part, as follows:

NOW, THEREFORE, IN CONSIDERATION OF THE MUTUAL COVENANTS HEREIN CONTAINED, IT IS HEREBY AGREED BETWEEN THE PARTIES AS FOLLOWS:

1) The Sellers shall sell and the Buyers shall purchase, free from all liabilities and encumbrances, subject to Sellers' Contract for Deed, the real property and improvements thereon, equipment, fixtures, and furnishings owned by the Sellers and operated as a business known as TWO–WAY INN BAR AND CAFE, Stanley, North Dakota, including the liquor inventory located upon the bar premises at the time of taking possession thereof.

The purchase price set out in the agreement provided in addition to a down payment of $43,500.00 and a payment for the cost of the liquor inventory, the Buyers would be obligated for monthly payments in the sum of $1,349.10 on the 4th day of each month for a period of ten years. The written agreement noted that the property sold and purchased under the contract included all furniture, fixtures, and liquor licenses used as a part of the business operation of the TWO–WAY INN BAR AND CAFE. The Buyers were given under the contract the privilege of replacing personal property which in their opinion became worn or obsolete, but the contract also provided the title to those replacements were to vest in the Sellers until the balance of the purchase price was paid in full. Additionally, Hustads were given under the contract a security interest in the furnishings and fixtures on the bar premises, and the Buyers agreed to execute the

necessary documents to grant such security interests to the Hustads. Financing statements were filed with the Secretary of State and the Register of Deeds for Mountrail County, North Dakota, which disclosed that the Hustads claimed a security interest in "[a]ll equipment, furnishings, and fixtures located in the TWO–WAY BAR AND CAFE located at Stanley, North Dakota, and any proceeds or replacements." The financing statements were properly filed and remained effective at the time Keith and Lana Flaten filed for bankruptcy relief.

Lana Flaten testified at trial that they moved out of the property one month before filing bankruptcy and told the Hustads that they were turning the property back over to them because they could not afford it any more. The Flatens owed the Hustads $76,000.00 under the contract at the time they moved out of the premises. The Flatens never paid anything more under the contract after moving out of the premises. The Flatens completed the required payments of $1,349.10 a month for November and December 1983 but did not make any payment in January 1984. The November payment was made in three installments over a period of time from November 7 to November 20, 1983. The payment was made by cash and various customers' checks which were endorsed over to the Hustads. The December payment was made in a similar fashion.

The last day the TWO–WAY BAR AND CAFE was open for business was on New Years Eve 1983. The Flatens completed moving out from the property by January 9, 1984. The Hustads subsequently obtained an Order of the District Court for Ward County, North Dakota, dated January 25, 1984, allowing Hustads to immediately enter the abandoned premises and operate the business. After obtaining the District Court Order, the Hustads reopened the bar, got the heat back on, replaced broken water pipes, fixed the well and cleaned up damage to the building caused by the broken water pipes. As soon as was possible, the Hustads reopened the bar and cafe for business. Keith and Lana Flaten

filed for relief under Chapter 7 of the Bankruptcy Code on February 10, 1984. Phillip D. Armstrong was duly appointed Trustee for the bankruptcy case on February 14, 1984. The Hustads filed a motion for relief from the automatic stay imposed by 11 U.S.C. § 362 on December 12, 1984. The motion was objected to by the Trustee, and after a hearing was held on the motion, the Court entered an Order granting the relief on February 26, 1985, permitting the Hustads to continue a state court action to cancel their contract for deed with the Debtors.

## CONCLUSIONS OF LAW

The Trustee asserts interests under sections 544 and 547 of the Bankruptcy Code in real and personal property held by the Hustads. The property includes the furnishings, equipment, fixtures and real property which makes up the TWO–WAY INN BAR AND CAFE. The Hustads contend, on the other hand, that the Trustee has no claim to the property since it was voluntarily returned to them by the Debtors prior to the filing of the bankruptcy case.

### I.

The real property interests in this proceeding spring from a contract for the sale and purchase of real estate reflected by the written agreement dated February 5, 1980. Resolution of the Trustee's claim to the real estate can only be made after examining the nature of the vendor and vendee's interests under the contract for deed. The Trustee claims that the Debtors held an interest in the real estate pursuant to the contract for deed at the time they filed for bankruptcy relief since formal cancellation proceedings initiated by the Hustads were not completed at that time. The Hustads argue that cancellation proceedings were not necessary to extinguish the Debtors' interests since the property was voluntarily returned to them by the Debtors.

A bankruptcy estate is created upon the commencement of a bankruptcy case which, in property terms, divests the

debtor from his interests in property. *See In re Schock*, 37 B.R. 399, 400 (Bankr.D.N. D.1984). The debtor's property is transferred under section 541 of the Bankruptcy Code to a bankruptcy estate which is either liquidated to pay creditors or utilized in a reorganization process to rehabilitate the debtor's business. Section 704 of the Bankruptcy Code mandates that the trustee in a Chapter 7 case collect and reduce to money property of the estate and close up the estate as expeditiously as possible and be accountable for all property received and to investigate the financial affairs of the debtor. Whatever interests in property the debtor holds at the time he files for bankruptcy relief is vested in a trustee. The trustee may also recover property interests which the debtor does not hold at the time of the bankruptcy filing but which constitute preferences under section 547 of the Bankruptcy Code.

■ Enforceability of contracts for the sale and purchase of real property rests on application of general contract law. *See Zitzow v. Diederich*, 337 N.W.2d 799 (N.D. 1983). Section 9–09–02 of the North Dakota Century Code provides that a party to a contract may rescind the agreement by consent of all of the parties to that contract. If a party fails to comply with the terms of a contract without receiving the mutual agreement of all other parties to rescind the contract, a breach of the contract for deed occurs and a breaching party is entitled to receive notice of that breach under N.D.C.C. § 32–18–01 and is given a period of time to cure the default under N.D.C.C. § 32–18–04. It has been noted that a debtor retains interests in real property even after there has been a breach of an agreement and foreclosure proceedings have been completed. *See In re Hulm*, 738 F.2d 323, 326 (8th Cir.1984) ("We have no difficulty in concluding that under North Dakota law [the debtor] had an interest in the property at the time of its sale, and at least until expiration of the redemption period."). The circumstances in the present instance support a finding that a breach of the contract rather than rescission occurred. Although the Debtors notified the

Hustads that they would be unable to fulfill the terms of the contract, there was no mutual agreement by the parties to void the contract for deed. The Debtors never returned the keys to the property, and the Hustads only returned to the property after commencing formal cancellation proceedings and obtaining an ex parte order of the State District Court allowing repossession.

■ The Hustads may argue that although the contract for deed was not rendered void by agreement of the parties nor cancelled pursuant to formal proceedings, the only interest which the Debtors retained and which vested in the Trustee upon the bankruptcy filing was a contract interest and not an interest in real property. Courts have noted, however, that a vendee under a contract for deed is an equitable owner of the property with interests in the real estate notwithstanding that the vendor retains legal title to the property. *See In re Adolphsen*, 38 B.R. 776 (Bankr.D.Minn.), *aff'd* 38 B.R. 780 (D.Minn. 1983). *See also In re Booth*, 19 B.R. 53 (Bankr.Utah 1982). A vendor who retains title under a contract for deed is generally viewed as holding essentially an interest equivalent to a mortgage. *See In re Love*, 38 B.R. 771 (Bankr.D.Mass.1983). The North Dakota Supreme Court has characterized the nature of interests under a contract for deed, as follows:

Under a contract for purchase of real property, the purchaser is generally regarded as the beneficial owner in equity while the vendor holds legal title in trust for the purchaser. *Woodward v. McCollum*, 16 N.D. 42, 111 N.W. 623, 626 (1907). The relationship between the installment vendor and his purchaser is essentially one of secured creditor and debtor and, for all practical purposes, the purchaser is regarded as owner and generally has the right to possess and use the property. *See Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717, 719 (1964). The vendor holds legal title as security for the payment of the entire purchase

price. *See Thompson Yards v. Bunde,* 50 N.D. 408, 196 N.W. 312 (1923); *Lee v. Shide,* 69 N.D. 541, 288 N.W. 556, 557 (1939).

*Zent v. Zent,* 281 N.W.2d 41, 45 (N.D.1979). Decisions under state law recognize that a vendee holds under a contract for deed an ownership interest in real property. The Debtors as vendees under their contract for deed with the Hustads held an interest in the subject real estate which vested in the Trustee upon the filing of the bankruptcy case.

■ Even if this Court were to determine that the Debtors and the Hustads mutually agreed to a rescission of the contract for deed, the Trustee may recover an interest in the property upon proof of a preferential transfer under 11 U.S.C. § 547. Under section 547 of the Bankruptcy Code, a trustee is allowed to recover a payment or transfer of property made within a period of 90 days prior to the bankruptcy filing which was credited against a debtor's antecedent obligation and which results in a greater return for the creditor than that which he would receive under bankruptcy liquidation. *See* 11 U.S.C. § 547. This Court has already noted that a vendee under a contract for deed holds an interest in property. Accordingly, an agreement to rescind the contract for deed and return the property to a vendor results in a transfer of property to the vendor. In the present instance, if the Court were to construe the Debtors' action as a mutual rescission and voluntary return of the property, it is clear that a transfer of property took place within a period 90 days prior to the bankruptcy filing. The Debtors' obligation to the Hustads arose at the time the contract for deed was executed in 1980. The transfer of property was made, therefore, to satisfy an obligation which existed long before the transfer took place. The Debtors estimated in their bankruptcy schedules that the property had a value of $90,000.00, and the Defendants offered no evidence in dispute of that valuation. The Hustads' claim against the Debtors at the time of the transfer amounted to $76,000.00. Thus, the vendors received more from the return of the property than the total remaining obligation under the contract for deed. A debtor is presumed under section 547(f) to be insolvent 90 days immediately preceding commencement of the bankruptcy case. The Defendants introduced no evidence to dispute that presumption in this instance. Accordingly, if the Court finds that the Debtors voluntarily returned the property due to a mutual rescission of the contract rather than simply breached their obligations under the contract for deed, the Trustee would be able to recover an interest in the real estate pursuant to 11 U.S.C. § 547 since the Debtors' action would have resulted in a preferential transfer.

■ While the Court recognizes that the Trustee retains an interest in the real property which is the subject of the contract for deed, that interest will remain subject to the vendor's interest unless the Trustee can avoid the vendor's interest under 11 U.S.C. § 544. Section 544(a) of the Bankruptcy Code provides, in part:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
>
> . . . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3). A transfer of the debtor's property has been found where a mortgage on the debtor's property is given to a creditor. *See In re Lyon,* 35 B.R. 759 (Bankr.D.Kan.1982); *In re Steele,* 27 B.R. 474 (Bankr.W.D.Wis.1983). An avoidance of the transfer is permitted under section 544(a)(3) only if "applicable law permits"

the bona fide purchaser to have a superior interest under the particular circumstances. 11 U.S.C. § 544(a)(3). The applicable law to be examined when addressing section 544 is the priority afforded a bona fide purchaser under state law. *See In re Russo*, 18 B.R. 257, 267 (Bankr.E.D.N.Y.1982) ("The existence of a lien for purposes of section 67(a) [of the Bankruptcy Act] is therefore derivatively determined by reference to the appropriate state law."); *In re Baxter*, 17 B.R. 932, 933 (Bankr.S.D.Ohio 1982) ("In determining the existence and enforceability of secured interests, state law controls."); *In re Carr*, 18 B.R. 794, 795 (Bankr.E.D.Pa.1982) ("[S]tate law governs the existence *vel non* of secured interests asserted by the parties in bankruptcy.").

 Section 47–19–41 of the North Dakota Century Code provides, in part:

Every conveyance of real estate not recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration ..., or as against an attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance.

N.D.Cent.Code § 47–19–41. Section 47–19–42 of the North Dakota Century Code makes it clear that the conveyances referred to under N.D.C.C. § 47–19–41 include mortgage interests. Again, a vendor under a contract for deed who retains title to the property is treated as if that party holds a mortgage interest. *Zent*, 281 N.W.2d at 45. While under N.D.C.C. § 47–19–41 unrecorded mortgages may be void against subsequent bona fide purchasers, it is also clear that unrecorded mortgages are valid as between the parties and those who have knowledge of the mortgage interest. *See Hart v. Casterton*, 56 N.D. 581, 218 N.W. 644 (1928). As previously noted a bankruptcy trustee assumes a fictional status under section 544(a) of the Bankruptcy Code, and any personal knowledge that the trustee may have had concerning the transaction is not imputed to the trustee as bona fide purchaser under 11 U.S.C. § 544(a)(3). While personal knowledge held by a trustee will not affect his status as bona fide purchaser, constructive notice imposed by state law will destroy the bona fide purchaser's priority claim to the property and, as a result, the trustee's avoidance power under section 544(a)(3). Under North Dakota law, a person dealing with real property is charged with notice of properly recorded instruments affecting the title to the property. *Northwestern Mutual Savings and Loan v. Hanson*, 72 N.D. 629, 10 N.W.2d 599, 602 (1943). The instrument under which the Hustads claim an interest in this proceeding, the contract for deed, was not properly recorded. Additionally, it is not established whether the contract for deed under which the Hustads were purchasing the property from Alfred and Ramona Jewett was properly recorded. Thus, it is not established that there was record notice of Hustads' claim to the property. Similarly, the record of title for the subject property does not disclose that the Debtors had an interest in the property. Thus, a purchaser of the property from the Debtors would be given notice by the record of title that a party other than the Debtors claimed an interest in the property. A purchaser of real property is also given constructive notice of a competing interest when there is open, notorious, and peaceful possession of real property by one other than the seller. *See Sorenson v. Olson*, 235 N.W.2d 892, 897 (N.D.1977). The Hustads were again in possession of the bar and cafe at the time the Debtors in this case filed for bankruptcy relief.

 In the decision *McCannon v. Marston*, 679 F.2d 13 (3rd Cir.1982), the Court of Appeals reversed a determination by the bankruptcy court that the trustee was a bona fide purchaser which could avoid McCannon's interest in property under section 544(a)(3) of the Bankruptcy Code. In that case, McCannon pursuant to a purchase agreement paid $500.00 toward the purchase price of a condominium and had taken possession of the property. The court held that the language of section

544(a), giving the trustee the right of a bona fide purchaser "without regard to any knowledge of the trustee or any creditor", did not make the trustee a bona fide purchaser under Pennsylvania state law as to the prior purchaser in possession of the property. The court held in essence that "knowledge" as used in section 544(a) is not to be equated with "notice" that a bona fide purchaser is required to take possession of the property by a prior purchaser. In the present instance, the Hustads were in open possession of the property at the time the bankruptcy case was filed. Any party who purchased the real property from the debtor at the time of the bankruptcy filing would have constructive notice of a competing interest in the property due to Hustads' open possession of the subject real estate. The absence of any record title of the Debtors' interest and the open possession of the property by the Hustads would prevent any purchaser at the time of the bankruptcy filing from obtaining status as a good faith purchaser without notice of competing claims to the property. Thus, the Trustee's claim as a bona fide purchaser under section 544(a)(3) is not sufficient to avoid the vendor's interest under these circumstances. Although the Trustee is not given a superior interest to the vendors, the Trustee still retains whatever interest the Debtors held in the real estate at the time they filed for bankruptcy relief. The Trustee holds an interest in the property which is subject to the lien of the vendors and whatever claims they make in formal proceedings for cancellation of the contract for deed. Naturally, if the Trustee chooses to assert his interest in the property rather than abandon it, he assumes the obligations and liabilities that the Debtors' interest in the property carried.

## II.

 The Trustee additionally asserts a superior interest to fixtures on the site of the subject real estate based upon the Hustads failure to properly file a fixture lien. This Court has previously set out the requirements for a proper fixture filing in the decision *In re Trestle Valley Recreation Area, Inc.,* 45 B.R. 458 (Bankr. N.D.1984). This Court has noted, however, that a perfected fixture filing only affects the priorities as against persons claiming an interest in the real property itself. Again, it has been determined that the Hustads have a prior interest or claim to the real estate over that of any subsequent good faith purchaser, including the Trustee. It is the interests of those subsequent purchasers that a fixture filing is intended to protect against. Since the Hustads already have established a prior interest to the real estate, a fixture filing is unnecessary to preserve a prior interest to the Trustee in those articles of property which have become affixed to the real estate.

 The Trustee finally asserts under 11 U.S.C. § 544 that the Hustads never received under the contract for deed a security interest in certain personalty. The contract for deed specified that a security interest would be given in furnishings and fixtures associated with the bar and cafe, and the proper documents would be executed to perfect that interest. The Trustee seeks to avoid interests which the Hustads may claim in equipment transferred by the written contract dated February 5, 1980. This Court has previously recognized that a financing statement has as its primary purpose to reasonably identify the nature of the secured collateral such that a third party might be placed on notice or such that it would be reasonable for a third party to make further inquiry of the claimed interests. *See In re Nelson,* 45 B.R. 443 (Bankr.N.D.1984); *In re Alexander,* 39 B.R. 110 (Bankr.N.D.1984). General terms are permissible in a financing statement if the liberal language it contains does not mislead or at least suggests that further inquiry is appropriate. The same degree of flexibility as to language is not allowed in the security agreement itself. The security agreement embodies the intention of the parties and is the primary source to which a creditor must direct his inquiry regarding the nature of the intended security interests. A security interest is

defined by the description contained in the security agreement. *Allis-Chalmers Corp. v. Staggs*, 117 Ill.App.3d, 428, 72 Ill.Dec. 840, 453 N.E.2d 145 (1983); *In re Fagan*, 26 U.C.C.Rep. 1004 (Bankr.S.D.N.Y.1979). For this reason, the description of collateral must be reasonably specific. *In re Laminated Veneers Co., Inc.*, 471 F.2d 1124 (2nd Cir.1973). North Dakota Century Code § 41–09–10 (U.C.C. § 9–110) provides that the description of personal property need not be specific but must reasonably identify what is described. As with any contract, the intentions of the parties must be apparent from the agreement reduced to writing. N.D.Cent.Code § 9–07–04 (1975). Thus, in this instance, the contract must reflect that the parties intended that the Hustads would retain a security interest in the equipment. Paragraph 14 of the agreement which provided for retention of security interests does not specifically include equipment among the items of collateral described. Nevertheless, the agreement in its entirety dealt with the sale of real estate and personalty associated with the bar and cafe business. Lana Flaten testified at trial that she understood she was purchasing everything in the place and that the agreement included a purchase of all the equipment, furnishings and inventory associated with the business. Viewing the agreement as a whole, the Court must find that the parties intended that the vendors were to retain an interest in all the property covered by the agreement until all installments provided for under the agreement were completed. The financing statement provides notice that the Hustads claimed an interest in all equipment, furnishings, fixtures and any proceeds or replacement property located on the premises of the bar and cafe. This supports the Court's finding that the parties intended that the vendors were to retain a security interest in the equipment. The Hustads were given an interest in the equipment in exchange for adequate consideration, and their interest was properly perfected by financing statements. The Trustee's claim for avoidance of the Defendants' interest in the equipment must therefor be denied.

## III.

The final claim which the Trustee asserts in this action is for avoidance and recovery of installment payments made by the Debtors pursuant to the contract for deed in November and December 1983. The Trustee alleges that these installment payments were preferential transfers under 11 U.S.C. § 547. It has been previously stated that a payment to a creditor with an allowed fully secured claim is not a preference. *See In re Santoro Excavating, Inc.*, 32 B.R. 947, 948 (Bankr.S.D.N.Y. 1983). A preference is established where there is a payment made within the 90-day period prior to bankruptcy filing which results in a greater return to the creditor than that which he would receive under a Chapter 7 bankruptcy case. *See* 11 U.S.C. § 547. The preference period in this case began on November 12, 1983. The November installment made by the Debtors under the contract for deed was paid over a period of time from November 7 to November 20. The precise dates and amounts of the payments were not established at trial, and the Trustee in closing arguments admitted that the November installment did not constitute a preferential payment. The Trustee persists, however, in his claim to the December installment. The Debtors admitted paying to the Hustads $1,349.10 during December pursuant to the contract for deed dated February 5, 1980. The Debtors' obligation to make the payment arose on the execution of the contract for deed. Thus, the December 1983 installment was paid on account of an antecedent debt. The crucial issue for the Trustee under his claim for avoidance of the December installment is whether the vendors received more from the installment than they would have received through liquidation proceedings under Chapter 7 of the Bankruptcy Code. At the time the December installment payment was received by the Hustads they had an over-secured claim, and at the time of the bankruptcy filing the Hustads held a fully secured claim under the contract for deed. Following the reasoning of

the court in *Santoro*, the installment payment against the fully secured claim held by the Hustads did not result in a greater gain to them than what they were to receive under a Chapter 7 bankruptcy case. The December 1983 installment merely freed up additional equity in the real estate and personalty held as collateral for the Trustee to claim. Thus, the Court cannot avoid the installment payments where they did not constitute preferences under 11 U.S.C. § 547.

Accordingly, and for the reasons stated, IT IS ORDERED:

That the Trustee's claim for avoidance and recovery of interests and payments pursuant to section 544 and section 547 of the Bankruptcy Code is DENIED.