**In re NORTHERN ACRES, INC., Debtor.**

**NORTHERN ACRES, INC., Plaintiff,**

**v.**

**HILLMAN STATE BANK, Defendant.**

**Bankruptcy No. 84–09317.**
**Adv. No. 84–9126.**

United States Bankruptcy Court,
E.D. Michigan, N.D.

Aug. 26, 1985.

Michael C. Reinert, Saginaw, Mich., for Northern Acres, Inc.

Lawrence P. Hanson, Birmingham, Mich., for Hillman State Bank.

## MEMORANDUM OPINION REGARDING PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

This opinion addresses the claim of Hillman State Bank in the dual contexts of a motion filed by the bank for relief from the stay and this adversary proceeding by the debtor in possession to avoid the bank's security interest.

### I. FACTS

Northern Acres, Inc. (the debtor) is an investment company engaged in the business of buying and selling real estate. At various times the debtor borrowed operating capital from Hillman State Bank. As security for these loans the debtor assigned to the bank its rights to receive payments under twenty-eight land contracts in which Northern Acres held a vendor's interest. These assignments were evidenced by documents entitled "Assignment of Land Contract Payments" executed in favor of the bank; between March 23, 1979 and July 14, 1982 the debtor executed five such assignments, all of which contain essentially the same terms. All five were recorded with the Montmorency County Register of Deeds, but no financing statement was filed with the Secretary of State pursuant to Mich.Comp.Laws § 440.-9401; Mich.Stat.Ann. § 19.9401. Subsequent to these transactions, the debtor went into default on its loans; the last payment on the loans was apparently made on May 6, 1983. The bank instituted an action in state court against the debtor on January 10, 1984, but no judgment has been entered in that case. In addition, the bank allegedly exercised its rights under the aforesaid instruments by notifying certain land contract vendees that their payments should be made directly to the bank rather than to the debtor. These notices were apparently sent to the vendees on

April 17, 1984 and May 9, 1984.[1] The debtor filed its petition for relief under Chapter 11 on July 27, 1984.

It also appears that before filing this case the debtor transferred several parcels of property on which it was receiving land contract payments. The records submitted by the bank indicate that prior to July 27, 1984 the debtor deeded away several of the parcels subject to the security agreements, such transfers being made to various individuals, most notably Robert and Patricia Maul. For the purposes of this analysis, only those properties deeded to them are significant, because subsequent to the debtor's petition for relief, the Mauls reconveyed many of these properties back to the debtor.

On September 4, 1984, the bank filed a motion requesting that the automatic stay be lifted pursuant to Bankruptcy Code §§ 362(d)(1) and 362(d)(2) to enable it to foreclose its interests in the land contracts. The outstanding balance and accrued interest due on the various loans was stated therein as $188,312.70. Before a decision was reached on that matter the debtor filed the instant complaint. As resolution of the issues raised by the complaint are at least partially determinative of whether the defendant is entitled to relief from the stay in the debtor's bankruptcy proceeding, it was agreed that we hold the motion regarding the stay in abeyance pending more extensive litigation in this case.

In the adversary proceeding, the plaintiff seeks the following: (1) a declaration that the defendant's security interests in the land contract payments are unperfected and may therefore be avoided by the debtor; (2) an order directing the debtor to return any payments made by the land contract vendees to the bank within 90 days of the filing of the debtor's petition for relief as preferential transfers under § 547 of the Bankruptcy Code; and (3) an order directing the vendees to make all future payments to the debtor.

The above facts raise the following issues for determination:

1. Are the parcels of real estate conveyed from the debtor to Robert and Patricia Maul before July 27, 1984, and subsequently reconveyed back to the debtor post-petition part of the bankruptcy estate?

2. Do the assignments of land contract payments to Hillman State Bank come within the purview of Article 9 of the Uniform Commercial Code or, in other words, was the bank required to file a financing statement to perfect its secured status?

3. Do the debtor in possession's lien avoidance powers, as contained in Bankruptcy Code § 544, extend to property acquired by the estate after commencement of the case?

## II. DISCUSSION

It is the debtor's contention that after-acquired property becomes property of the estate pursuant to Bankruptcy Code § 541(a)(7). Moreover, since the debtor in possession has access to the powers of a judicial lien creditor, §§ 1107, 544(a), it claims that it can use those powers to avoid any unperfected security interests on the after-acquired property as well as property in the estate on the date of the petition for relief. The bank does not dispute that the debtor in possession may acquire property for the estate post-petition; however, it argues that the debtor in possession's § 544(a) avoiding powers do not extend to after-acquired property. It notes that § 544(a) grants a lien to the trustee "as of the commencement of the case", and inter-

---

1. The defendant's brief in opposition to plaintiff's motion for summary judgment states that it sent out notices to land contract vendees on April 17, 1984 and May 9, 1984 directing them to send payments directly to the bank. However, nowhere in the record in this proceeding is there an affidavit or exhibit verifying this representation. Moreover, we have examined the files relevant to the bank's motion for relief from the automatic stay, and no evidence of these notices appears there, either. Inasmuch as no evidence of these notices was submitted by the defendant, nor does the plaintiff respond to the representations in the defendant's brief, it would be inappropriate to grant summary judgment on any matter which is materially affected by these facts.

prets this to mean that property coming into the estate subsequent to that date is subject to all security interests held in that property. In the current case, the bank takes the position that since the debtor had no interest in the properties deeded to Robert and Patricia Maul on the date the Chapter 11 was filed, the debtor may not avoid the bank's security interests, even if they are unperfected. So far as we can determine the situation presented here has not been discussed in any published opinion.

■ The bank does not deny that the reconveyed properties are part of the debtor's estate, but instead challenges only the effect which those transfers have on its lien. The properties in question are "property of the estate" as defined by § 541(a)(7), as they are "interests in property that the estate acquired after the commencement of the case." Since the property is part of Northern Acres' bankruptcy estate, it comes under the protection of the automatic stay afforded by § 362(a) of the Bankruptcy Code. The relevant provisions therein, § 362(a)(2) and (a)(3), which enjoin any act to take possession of, place a lien on, or enforce a lien on any property of the estate, contain no limitation regarding when the property was acquired. Ergo, if the property is "property of the estate" (as that term is defined by § 541), then the stay applies to that property whenever it comes into the estate.

### A. WAS THE SECURITY INTEREST SUBJECT TO THE UCC?

■ The defendant contends that the assignments are not voidable as unperfected security interests on several grounds. First, it takes the position that the assignments executed by the debtor were not simply an assignment of the land contract payments, but were an assignment of the debtor's entire interest in the subject land contracts. Second, or maybe consequently, the bank argues that the interest thus received was an interest in realty and there-

fore excluded from the operation of Article 9 of the Michigan Uniform Commercial Code. Finally, the bank claims that even if it received an unperfected, nonpossessory security interest in personalty initially, the debtor's pre-petition default caused the debtor's entire interest to be transferred to the bank, either automatically or because it "foreclosed" upon its interests by notifying the land contract vendees that payments should be made directly to the bank.

Examination of the instruments [2] effectuating the assignments leaves little doubt that they assigned only the right to receive land contract payments as security for the loans. The title of the documents themselves, "Assignment of Land Contract Payments", strongly suggests that the parties intended the instruments to assign only the payments and no more. Moreover, the text states in express terms what the assignments' title infers. Under the first paragraph, the assignor,

> to further secure the payment of all sums now or at any time hereafter due or to become due from the Assignor, Hillman State Bank, .... does hereby sell, grant, transfer, assign and set over unto the Assignee, its successors and assigns, *all rights, title and interest of the Assignor in and to the payments due or become due* by anyone liable thereunder.

(Emphasis added). It is a basic rule of contract interpretation that when possible, a provision of an agreement should be given its plain meaning, *American States Ins. Co. v. Stachowski*, 249 F.Supp. 189 (E.D. Mich.1965); *New Amsterdam Cas. Co. v. Sokolowski*, 374 Mich. 340, 132 N.W.2d 66 (1965); *Rome v. Sinai Hospital of Detroit*, 112 Mich.App. 387, 316 N.W.2d 428 (1982). The quoted language of the contract between the parties herein could hardly be simpler in its intent to grant only the payment rights as security.

The bank points to other language in the instrument to support its claim that it held

---

**2.** The five documents of assignment were not identical, but are materially similar in that they may be interpreted to have the same effect without doing any violence to the intent of the parties.

a security interest in the actual land contracts (and therefore the land); in particular, the bank notes that under paragraph 5:

> Assignee may make any payment or perform any action required of the Assignor under the Land Contracts, without releasing the Assignor from the obligation to do so and without notice or demand of the Assignor, including the performance of any obligation contained in the Land Contracts ...

Additionally, in the event of the debtor's default, the bank had the right to take possession of the premises under land contracts, convey title, evict tenants, fix and collect rents, and so on. We are not persuaded that these grants of power have the effect of assigning to the bank more than the rights to the land contract payments as security. The articles relied upon by the bank do not give it a security interest in the land contracts or in the land itself; they merely give the bank tools by which to enforce its security interest and obtain the collateral—that is, the payments made by land contract vendees—in the event of default by the debtor.

Since we hold that the bank received only the right to receive the land contract payments as collateral, it is next necessary to determine whether a security interest in such obligations comes within the scope of the UCC. The debtor advances two theories as to why the instant assignments are governed by Article 9. First, it asserts that since under Michigan law a vendor's interest in a land contract is personalty rather than realty, the right to payments under a land contract must necessarily be personalty. Second, it claims that the security interest in land contract payments is a security interest which, being nowhere excluded from the UCC, must be within its intended scope. The bank counters, first by attempting to distinguish the Michigan law regarding the nature of a land contract

vendor's interest, and second by contending that its security interest is expressly excluded from the rules of Article 9 by § 9–104(j).[3]

The issue is resolved simply by a careful interpretation of the Michigan Uniform Commercial Code. Mich.Comp.Laws § 440.9102(1)(a); Mich.Stat.Ann. § 19.-9102(1)(a) provides that Article 9 applies "to any transaction (regardless of form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, accounts or contract rights." The bank is correct in noting that § 440.9104(j) generally excludes security interests in real estate. However, the defendant's position fails to recognize the distinction between a security interest in realty and a security interest in an instrument secured by realty. The distinction is addressed in § 440.9102(3)[4] and further illuminated by an example found in Official U.C.C. Comment 4 to that section:

> The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, *when the mortgagee pledges the note to secure his own obligation to X, this* Article applies to the security interest in an instrument even though the instrument is secured by a real estate mortgage ...

(Emphasis added).

The example makes clear that when the holder of a right to payment for the sale of realty assigns that right to secure his own indebtedness to a third party, that security interest is governed by the Uniform Commercial Code. Courts in this circuit and this district which have considered

---

**3.** Mich.Comp.Laws § 440.9104(j); Mich.Stat. Ann. § 19.9104(j) states that: "This article does not apply to: (j) ... creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder ...".

**4.** Mich.Comp.Laws § 440.9102(3); Mich.Stat. Ann. § 19.9102(3) states: "The application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply."

this issue have held that the right to receive payments for the sale of land was personal property subject to Article 9. *In re Maryville Savings & Loan Corp.*, 743 F.2d 413 (6th Cir.1984), *supplemental opinion*, 760 F.2d 119 (6th Cir.1985); *In re D.J. Maltese, Inc.*, 42 B.R. 589 (Bankr.E.D. Mich.1984). We concur with their analyses. *See also In re Equitable Development Corp.*, 617 F.2d 1152 (5th Cir.1980); *In re Shuster*, 47 B.R. 920, 40 U.C.C.Rep. 1840 (D.Minn.1985); *In re I.A. Durbin, Inc.*, 46 B.R. 595 (Bankr.S.D.Fla.1985); *In re Columbia Pacific Mtg., Inc.*, 22 B.R. 753 (Bankr.W.D.Wash.1982); *In re Freeborn*, 94 Wash.2d 336, 617 P.2d 424, 29 U.C.C.Rep. 1625 (1980).

In a supplemental brief, Hillman State Bank cites the recent case of *In re Hoeppner*, 49 B.R. 124 (Bankr.E.D.Wis.1985) in support of its argument that the case falls outside the scope of the Uniform Commercial Code. In *Hoeppner*, the debtor assigned all of its land contract vendor's interest in several parcels to the creditor as security for a loan. The creditor bank recorded its assignments with the Register of Deeds, but not with the Wisconsin Secretary of State. When the debtor filed a petition for relief under Chapter 7, the trustee sought to set aside the bank's lien. The bankruptcy court declined to interpret the Wisconsin equivalent of U.C.C. § 9–102(3) to apply to either the land contract or the assignment of the vendor's interest, and thus held that the bank's lien was not subject to avoidance. The court relied in part on *In re Maryville Savings & Loan Corp., supra.* In that opinion, the Sixth Circuit Court of Appeals had held that, under Tennessee law, the assignment for security of a promissory note is governed by the Uniform Commercial Code, but the assignment of deeds of trust was not.

■ We find the instant case to be distinguishable from *Hoeppner*. In that case, the debtor assigned all of its vendor's interest as security; the court analogized the assignment of this interest to the assignment of a mortgage or deed of trust and, following *Maryville Savings & Loan*, held

the transaction to be unaffected by the Uniform Commercial Code. In the case at bar, the debtor did not assign all of its interest—it assigned only the right to receive payments from the debtor's vendees. Using *Maryville Savings & Loan* as a guide, we hold that the mere assignment of the right to receive land contract payments more closely resembles the assignment of a promissory note than it does a mortgage or deed of trust. That being so, the instant transaction is within the purview of the Uniform Commercial Code.

The bank's last argument on the nature of its security interest is that the debtor had lost all interest in the right to receive those payments prior to filing its petition for relief. The defendant contends that when the debtor was in default on its notes, the right to receive the land contract payments vested automatically in the defendant without its being required to take further action. In the alternative, it adds that it notified various land contract vendees to make their payments directly to the bank, and that this divested the plaintiff of any interest in either the payments or the parcels of real estate.

With regard to the bank's claim that possession of the rights to land contract payments vested in itself automatically, the bank relies on the following provision of the assignment:

1. Assignor shall have the right to collect payments from the Vendees more than 30 days prior to accrual, until such time as a default occurs in the terms and conditions of the above note or in the performance of the covenants and agreements herein.

Although the argument is not stated explicitly in its briefs, the bank evidently takes the position that since the debtor's right to receive land contract payments terminates upon default, the right to those payments is implicitly transferred to the bank. Since the debtor apparently was in default well before it filed its petition for relief, the debtor would have had no right to receive payments, even though it may still have had legal title.

■ Review of the above clause and the document as a whole compels a conclusion that the transfer of rights to payment was not in fact self-executing. Neither the clause quoted above nor any other provision of the assignment indicates that transfer of right or title to the land contract or the land occurred without further action. When the document is regarded as a whole, such a construction would be impractical. No definition of what would constitute a default sufficient to trigger a transfer of title is provided in the assignment, nor is there any requirement that the Assignee notify the debtor that it, the bank, considers the debtor in default. Furthermore, unless the bank takes some action calculated to inform the land contract vendees of a default by the debtor, the transfer of right would be almost totally ineffective. In short, the proposition that the right to payments transferred automatically to the bank without the need for some sort of formal action or declaration of default is not credibly sustained by a fair reading of the security instruments. To accept the bank's assertion, we would have to imply substantive provisions into the agreement, which we decline to do.

### B. DEBTOR IN POSSESSION'S LIEN AVOIDANCE POWERS

■ Because Hillman State Bank failed to record the assignment of its security interest with the Secretary of State, it holds an unperfected security interest. Thus, the debtor in possession may avoid the security interest and obtain a recovery of preferential payments *if* it can utilize the lien avoidance provisions of § 544(a). The debtor contends that since it possesses all of the avoidance powers of a trustee, 11 U.S.C. § 1107, and since the estate now includes all of the property subject to the unperfected lien, it may use the trustee's powers as a hypothetical lien creditor under 11 U.S.C. § 544(a) to set aside the bank's lien for the benefit of the estate. The bank responds by noting that the statute grants the trustee the powers of a lien creditor "as of the commencement of the case". It interprets this qualifying language to mean that the trustee's powers extend only to property which was part of the estate on the date the petition was filed; the bank further claims that it would be inequitable to permit a debtor to acquire property post-petition and have the ability to avoid the lien, where the debtor's transferor would not have the power.

A fair and plain reading of the statute convinces us that the bank's reading of the statute is correct. First, it is better simply as a matter of statutory construction. We must assume that the language "as of the commencement of the case" was included in the statute with a purpose in mind, and we should give effect to that purpose. Clearly, the phrase defines when the trustee's lien avoidance powers arise; the question is whether it also defines a particular moment in time at which the trustee's powers are to be measured. We think it does establish a point at which the trustee's rights are to be measured. For example, in *In re Flaten,* 50 B.R. 186, 13 B.C.D. 216 (Bankr.D.N.D.1985), the court analyzed the trustee's powers to avoid a lien by virtue of his powers under § 544(a)(3), that is, as a bona fide purchaser of realty. The bankruptcy court analyzed the state of title as if the trustee had purchased the debtors' realty on the date of filing. Because the trustee should have been on notice (according to North Dakota law) of the adverse interest in the property, the trustee could not set aside that interest for the benefit of the estate.

■ That analysis is equally appropriate here. At the instant the petition for relief was filed, a judgment creditor could not have levied on the properties in question because the debtor did not then have any interest in them. The debtor's ownership of the properties does not "relate back" to the date the bankruptcy was filed because the properties were merely acquired post-petition; they were not "returned" to the estate by virtue of the debtor in possession's avoiding powers. For example, if Northern Acres made fraudulent transfers (either under state fraudulent conveyance

law or under 11 U.S.C. § 548) when it conveyed the properties to the Mauls, and if the debtor, as a trustee, successfully sued [5] the Mauls to avoid the transfers, then it may be argued that the transfers to the Mauls never lawfully occurred and the relation back doctrine would be appropriate. Likewise, under state law, a judgment creditor could sue the fraudulent transferee to set aside the transfers and levy on the recovered properties. Similarly, if the transfers to the Mauls had occurred within the preference period and otherwise met the elements of a preference, the recovery of the properties by the estate would relate back to the filing of the bankruptcy. Accordingly, under any of these circumstances, the property would indeed be property of the estate at the commencement of the case.

If, in furtherance of its duties, the debtor in possession had used its avoiding powers under §§ 547 or 548, the property recovered would constitute property of the estate, by operation of §§ 551 and 541(a)(4), *as of the commencement of the case. See In re Brown,* 33 B.R. 219, 11 B.C.D. 195 (Bankr.N.D.Ohio 1983); 4 *Collier on Bankruptcy,* ¶ 541.17, 541–90 (15th ed. 1983). However, that is simply not what the debtor alleged occurred here. The affidavit of the debtor's attorney claims that "[a]ll properties previously conveyed by Northern Acres, Inc. to Robert and Patricia Maul, which were also given to Hillman State Bank as collateral, have been reconveyed back to the Debtor in possession by deed and land contract assignment and are thus property of the estate." No mention was made as to *avoidance* of the transfers to the Mauls. It would be the debtor's burden to raise and support any facts which would give credence to this argument. The attorney for Northern Acres simply declares, by affidavit, that the prop-

erty was "reconveyed" by the Mauls. In the absence of any allegations or proofs of a recovery by the estate of fraudulent or preferential transfers made by Northern Acres to the Mauls, we must assume that the debtor in possession acquired the property in circumstances more akin to a purchase than an annulment of a fraudulent or preferential transfer. Therefore, since the properties in question were not "property of the estate", § 541(a), "at the commencement of the case", § 544(a), the debtor in possession has no substantive right as a lien creditor to avoid the bank's unperfected security interests thereon.

## III. CONCLUSION

To summarize our holdings, we hold that property acquired by the debtor after the commencement of the case is property of the estate under § 541(a), and thus the stay applies to enjoin the continuation of proceedings against the debtor to recover that property. § 362(a). Second, the security interests in the land contract payments held by Hillman State Bank are unperfected because the bank failed to properly file financing statements. However, even though the properties held by the debtor in possession are subject to unperfected liens, the debtor in possession may not use the lien avoidance powers of § 544(a) to set them aside because, on the facts of this case, the properties were not property of the estate as of the commencement of the case. Accordingly, the plaintiff's motion for summary judgment should be denied.

Concurrently, we grant summary judgment to the defendant. Technically, the bank's motion for summary judgment asks for a declaration "that its claim is secured and perfected and is superior to the claims and challenges of Debtor-in-Possession". As the foregoing analysis has explained,

---

**5.** Under § 1107(a), the debtor in possession has not only all of the rights of a trustee, but assumes all of the duties, too. Those duties include, *inter alia,* the obligation to "collect and reduce to money the property of the estate for which such trustee serves." 11 U.S.C. § 704(1). The mere fact that the debtor in possession did not commence adversary proceedings against

the Mauls under §§ 547 or 548 does not prove that no causes of action existed; there is no requirement that a trustee file a complaint if the property is returned voluntarily. Then, of course, the debtor could utilize the trustee's avoiding power as to the bank's unperfected security interests in the land contract payments.

the bank's liens are *not* perfected. However, because the debtor in possession may not avoid the unperfected security interests, the effect is the same insofar as the bank is concerned; Northern Acres takes the properties subject to the interest of Hillman State Bank. Thus, we grant summary judgment to the extent that we determine that the bank is secured.[6]

We also deem the cross motions for summary judgment filed in the adversary proceeding to be cross-motions for summary judgment with regard to the motion for relief from the stay. However, we are unable to determine from the pleadings or exhibits on file whether the bank has established the right to relief under § 362(d)(1) or (d)(2). The bank's motion for relief from the stay alleges that it is not receiving adequate protection for its interest, that Northern Acres has no equity in the property, and that the property is unnecessary for an effective reorganization. The debtor filed a minimal response which simply denies that the above elements of a § 362(d) action exist here. Neither party has submitted exhibits or proofs from which we are able to determine as a matter of law whether the stay should be lifted in this case. Accordingly, we deny both parties' motions with respect to the motion for relief from the stay.[7]

The clerk shall set a preliminary hearing on the motion within 30 days of the entry of this order.[8] Orders consistent with this opinion shall be entered contemporaneously herewith.

---

6. We note that the bank would enjoy the same priority as to the debtor and its successors in interest outside of bankruptcy. Under normal commercial law, a creditor's unperfected security interest is immune from attack by the debtor; it is only when a third party intervenes that the creditor's lack of perfection becomes material. When the debtor files for Chapter 11 relief, an artificial third party, the debtor in possession, is created. But his powers to set aside liens is measured only at the commencement of the case.

If the property remained in the possession of the Mauls, they would not be able to avoid the bank's security interest (unless they, too, filed for bankruptcy relief). Our holding essentially boils down to this: when the debtor purchases property after commencement of the case, it buys only what its vendor had, and cannot apply the Bankruptcy Code's "strong arm" powers to those assets.

7. This situation may be analogous to those cases wherein the debtor has acquired property shortly *before* the petition for relief has been filed,

and the clear purpose of such transfer was to take advantage of the automatic stay. Under such circumstances, courts have occasionally held the filing of the bankruptcy to be abusive and lifted the stay for cause. *See, e.g. In re Yukon Enterprises, Inc.,* 39 B.R. 919, 11 B.C.D. 1295 (Bankr.C.D.Cal.1984); *In re White,* 8 B.R. 247 (Bankr.C.D.Cal.1981). If we find that the purpose of the transfer from the Mauls back to Northern Acres, Inc. was merely to activate the automatic stay, that alone might constitute "cause" to lift the stay. § 362(d)(1). However, as noted *infra,* we cannot make the finding of fact necessary to reach that legal conclusion at this juncture.

8. In its motion for summary judgment, the defendant prays for an order compelling the debtor to respond factually to the motion for relief from the stay within thirty days. Holding a preliminary hearing on the motion is sufficient to satisfy that relief.